338 F.2d 299
 Dorothy M. ZERVAS, Appellant,
v.
Linda L. ZERVAS, a Minor, Lona M. Zervas, a Minor, Cynthia
A. Zervas, a Minor, Daniel R. Zervas, a Minor, and John C.
Zervas, a Minor, by Norris H. Allen, Guardian Ad Litem, and
Mary M. Melchior, Executrix of the Estate of John J. Zervas,
Jr., Deceased, and Trustee under the Will of John J. Zervas,
Jr., Deceased, Appellees.
Mary M. MELCHIOR, Executrix of the Estate of John J. Zervas,
Jr., Deceased, and Trustee under the Will of John
J. Zervas, Jr., Deceased, Appellant,
v.
Linda L. ZERVAS, a Minor, Lona M. Zervas, a Minor, Cynthia
A. Zervas, a Minor, Daniel R. Zervas, a Minor, and John C.
Zervas, a Minor, by Norris H. Allen, Guardian Ad Litem, and
Dorothy M. Zervas, Appellees.
 Nos. 17707, 17708.
 United States Court of Appeals Eighth Circuit.
 Nov. 12, 1964.
 
 Lawrence E. Ehrhart, St. Louis, Mo., made argument for Dorothy M. Zervas and filed brief.
 Val Terschluse, St. Louis, Mo., made argument for Mary M. Melchior and filed brief.
 William B. Anderson, of Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., made argument for appellees and filed brief with Norris H. Allen, St. Louis, Mo., guardian ad litem.
 Before MATTHES, BLACKMUN and RIDGE, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 This case involves a controversy over the proceeds of a life insurance policy issued by the Lafayette Life Insurance Company, referred to herein as Company, on the life of John J. Zervas, Jr., now deceased, sometimes referred to herein as Insured.
 
 
 2
 The three parties claiming the proceeds of the funds are: Dorothy M. Zervas, the divorced wife of Insured; Linda L., Lona M., Cynthia A., Daniel R. and John C. Zervas as a group, minor children of Insured; and Mary M. Melchior, Executrix of the Estate of John J. Zervas, Jr., deceased, and Trustee under his will.
 
 
 3
 Company is an Indiana corporation having its principal place of business in that state, and all claimants are citizens of Missouri. The amount in controversy exceeds $10,000 exclusive of interest and costs, thus diversity jurisdiction requirements are satisfied.
 
 
 4
 Company filed its complaint in interpleader in the United States District Court and simultaneously deposited $20,000.00, the proceeds of the policy, in the court's Registry. Answers, which incorporated claims to the fund, were filed by the three claimants; the cause was submitted to the court on a stipulation, documents attached thereto and the deposition of one witness. The court found that the five minor children of Insured were the beneficiaries of the policy and entitled to the amount deposited less a fee for their Guardian Ad Litem and rendered judgment accordingly.[1] In appealing from the judgment, claimants Dorothy M. Zervas and Mary M. Melchior, Executrix, etc. filed separate notices of appeal.
 
 
 5
 The crucial question for determination is whether Insured effectively changed the beneficiary from Dorothy M. Zervas, his former wife, to his five minor children above named. As noted, the trial court, Judge, Regan, answered in the affirmative. We agree and affirm.
 
 
 6
 A summary of the facts is essential to an intelligent understanding of the contested issue. When the policy was issued on July 3, 1962, Dorothy M. Zervas, then the wife of Insured, was designated as the primary beneficiary.[2] She instituted a divorce action against Insured on July 20, which culminated in a final decree in her favor on September 19. On August 2, Insured executed a 'Notice of Change of Beneficiary', in duplicate, on a form obviously prepared by Company revoking the prior named beneficiary and designating his five minor children, by name, as the beneficiaries under the policy.[3] On the same day, August 2, Insured executed another document in duplicate entitled 'Memo-Gram' giving directions to Company in this language:[4]
 
 
 7
 'The proceeds of the policy to be divided equally among the beneficiaries, but each amount to be held in trust at interest until said beneficiaries' attained age of 25. In the event of a named beneficiary's death prior to his age 25, the proceeds shall be paid to his surviving children, if not to his estate on the date said beneficiary would have been 25 years of age.'
 
 
 8
 Documents 1, 2, 3, and 4 and the policy were forwarded to Company and were received by it on August 6. Company acknowledged receipt of the documents and policy by form letter dated August 10, in which it requested Insured to complete and return to it another form entitled 'Agreement of Designation of Beneficiary and Method of Settlement'.[5] The policy was retained by Company. Insured received Documents 5 and 6 but did not execute No. 6, although he was again requested to do so by Company in a communication dated September 18.[6] Another Memo-Gram dated September 22 was prepared by an agent of Company at the direction of Insured in which Company was advised: 'I am returning the enclosed Change of Beneficiary forms to you. Mr. Zervas now wants the proceeds of his policy paid to his Estate. In other words the primary beneficiary is to be named as his Estate.'[7]
 
 
 9
 Insured executed his 'Last Will and Testament' on September 24, in which he established a trust for his five children and named appellant Mary M. Melchior, Executrix of his estate and trustee for the minor children. On the same day of the execution of his will, Insured took his own life.
 
 
 10
 The parties agree that Missouri law controls the disposition of this case and that Missouri courts have applied the substantial compliance rule in cases where there was drawn in controversy the question whether the insured had effected a change of beneficiary. Thus, in Persons v. Prudential Insurance Co. of America, Mo.Sup., 233 S.W.2d 729, at page 731 (1950) the Supreme Court of Missouri enunciated the rule in this language:
 
 
 11
 'Generally, the policy provisions relating to a change of beneficiary must be followed, but equity will hold the requested change effective if the insured has done all that he could to comply with such provisions. * * * In Anno., 78 A.L.R. 970, it is stated: 'By the great weight of authority, a change of beneficiary can be accomplished without a strict or complete compliance with the conditions of the policy regarding the endorsement of the insurer. The courts upholding this view usually state the general proposition that a substantial compliance by the insurer with the conditions respecting a change of beneficiary is sufficient.'
 
 
 12
 'This is the rule in Missouri.' (citing cases)
 
 
 13
 To the same effect are John Hancock Mut. Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57 (1955); Postal Life & Casualty Ins. Co. v. Tillman, Mo.App., 287 S.W.2d 121 (1956). See also Sun Life Assur. Co. of Canada v. Williams, 284 Ill.App. 222, 1 N.E.2d 247 (1936); Prudential Ins. Co. of Amer. v. Moore, 145 F.2d 580 (7 Cir. 1944); 2 Appleman, Insurance Law and Practice, Sec. 1021, (1941).
 
 
 14
 In view of the settled state of the law, all we need resolve is whether on the undisputed facts the trial court correctly found and concluded that Insured had substantially complied with the provisions of the policy relating to change of beneficiary in designating his minor children as beneficiaries.
 
 
 15
 The main thrust of Dorothy M. Zervas' argument is that Company's action in sending Document 6 to Insured after it had received Documents 1 through 4, is conclusive proof that it had not accepted the notice of change as it was required to do under the policy provisions; and that the failure of Insured to execute and return No. 6 likewise precludes a finding that he had done all that was within his power to make substantial compliance with the provisions of the policy in regard to change of beneficiary.
 
 
 16
 Mary M. Melchior, Executrix, etc., takes a somewhat different approach in her efforts to obtain the proceeds of the policy. Her theory, on appeal, is that Insured revoked his prior designation of his ex-wife as beneficiary by executing documents 3 and 4, 'Notice of Change of Beneficiary', on August 2, but that Company did not accept Insured's designation of the five minor children as beneficiaries as evidenced by the course of action it pursued after receiving the notice of change.[8] Going a step further, appellant Melchior argues that the communication to Company dated September 22, Document 8, coupled with the execution of his will which created a trust for his children, 'altogether strongly indicate that the insured had abandoned the idea of making his children the beneficiaries directly under the insurance policy'. Having thus posited her position, appellant Melchior reaches the conclusion that there was no named beneficiary when Insured died and that consequently the proceeds of the policy must be paid to his estate.
 
 
 17
 The provisions of the policy governing change of beneficiary are, of course, vitally important. They provide that Insured may, without the consent of the beneficiary, designate a new beneficiary by filing written notice with Company; that the policy must be presented for endorsement of any change of beneficiary and that 'any change shall take effect as of the date the notice was signed, upon acceptance and recording at the Home Office * * *'.
 
 
 18
 Beyond any question the first two conditions were met. Insured did designate a new beneficiary by use of the form provided by Company for that very purpose and he did present the policy to Company for endorsement of the change. The failure of the latter to perform the ministerial act of endorsing the change on the policy is without compelling significance. The recording provision, being for the protection of Company, was waived by its filing of the Interpleader action and the payment of the proceeds of the policy into court. Persons v. Prudential Ins. Co. of America, supra, 233 S.W.2d at p. 732; John Hancock Mutual Life Insurance Co. v. Dawson, supra, 278 S.W.2d at p. 61; Sun Life Assur. Co. of Canada v. Williams, supra, 1 N.E.2d at p. 248; 2 Appleman, Insurance Law and Practice, Section 1021, p. 436.
 
 
 19
 Neither are we persuaded by the argument that Company's action in requesting Insured to execute Document 6 demonstrates that it had not, within the meaning of the policy, accepted the notice of change. This contention would have more appealing force if the provisions of Document 6 were different in substance from the controversial notice and memogram. We interpret this document as being designed solely for the purpose of clarifying and altering one aspect of the mode of payment to the new beneficiaries.
 
 
 20
 As we have seen, Insured had directed, in Documents 1 and 2 that the proceeds of the policy were to be divided equally among his children; that such proceeds were to be held in trust, at interest, until each beneficiary had reached the age of 25; and that in the event of the death of a named beneficiary before he had attained that age, the amount due such deceased beneficiary was to be paid to his surviving children, 'if not to his estate on the date said beneficiary would have been 25 years of age'. The only change which Document 6 would have effected related to payment in the event of the death of a beneficiary prior to attaining the age of 25 leaving no surviving issue. In such event, under Document 6, his share of the proceeds plus accumulated interest would be immediately payable to the estate of such beneficiary.
 
 
 21
 Thus, and by way of summary, the court's findings, (1) that the execution by Insured on August 2 of the notice of change of beneficiary and the memogram constituted a substantial compliance with the terms of the policy; (2) that the change became effective as of the date of the notice; and (3) that it was not necessary for Insured to execute Document 6, are supported by the facts-- such findings are not clearly erroneous and must be sustained.
 
 
 22
 In reaching this conclusions, we have, of course, considered all of the events which occurred subsequent to August 2, and in particular Document 8, and Insured's last will which established a plan whereby his estate, insolvent without the proceeds of the policy, could be used for the welfare of his children during their minority. These circumstances, certainly indicative of an intent on the part of Insured to make further change in the mode of payment of the proceeds of the policy, were not sufficient in law to effect or modify the then existing policy provisions.
 
 
 23
 The judgment is, in all respects, affirmed.
 
 
 
 [1]
 The judgment provided for payment of a fee of $975.00 to the Guardian Ad Litem and 'that the $19,025 balance of said Registry account be disbursed by the Clerk to the plaintiff, The Lafayette Life Insurance Company to be held in trust by it for said minor children.'
 
 
 [2]
 All date references are to the year 1962
 
 
 [3]
 Following the names of the children, the dates of their birth were indicated
 
 
 [4]
 The two 'Notices of Change of Beneficiary' are designated in the record as Documents 3 and 4; the two 'Memo-Grams' are designated in the record as Documents 1 and 2. Hereinafter, for sake of brevity, we shall, in most instances, use these designations in referring to the documents
 
 
 [5]
 The letter acknowledging receipt of the policy and the accompanying documents are designated in the record as Document 5, and the 'Agreement of Designation' etc., as Document 6
 
 
 [6]
 Designated in record as Document 7
 
 
 [7]
 Designated in record as Document 8
 
 
 [8]
 Appellant Melchior has completely abandoned her trial theory which was that Insured had changed the beneficiary twice. First, by Documents 3 and 4 executed on August 2 and second, by Document 8 sent by an agent of the Company at Insured's request. The court found: 'There is some evidence in this case that John J. Zervas, Jr., intended to make a further change of beneficiary to his estate, but he performed no act which could be construed to be in substantial compliance with the terms of the policy to effect a change of beneficiary to his estate.'