**Ruby ZEIGLER, et al., Plaintiffs,**

**v.**

**Guarina CARDONA, Defendant.**

**Civ. A. No. 91–D–1341–N.**

United States District Court,
M.D. Alabama, N.D.

Aug. 2, 1993.

---

William Eason Mitchell, Alabaster, AL, for Ruby and Keith Zeigler.

J. Greg Allen, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, for Guardian ad litem of the Minor Children of Antonio Suarez, Sr., Deceased.

Warren Wynshaw, New York City for Guarina Cardona.

Charles D. Stewart, Birmingham, AL, for Liberty Nat. Life Ins. Co.

## OPINION

De MENT, District Judge.

The court, having conducted this trial ore tenus, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The court finds from the evidence that on or about March 26, 1990, Antonio Suarez, Sr., applied for life insurance on his life in the amount of $50,000.00 with Liberty National Life Insurance Company. The agent taking the application was Winifred Hamilton. Liberty National issued policy number, to-wit,

30798355 effective April 1, 1990. At the time of the issuance of the policy, the only beneficiary listed on the policy of insurance was Guarina Cardona. Guarina Cardona is the mother of the insured, Antonio Suarez, Sr. Ms. Cardona is the grandmother of the two minor children represented by a guardian ad litem in this case, viz.: Antonio Suarez, Jr., who is nine years old and Ebony Suarez, who is eight years old. At the time of the original issuance of the policy, no contingent beneficiaries were named by the insured or appeared on the policy. Mr. Suarez maintained ownership of the policy from the time it was issued until his death on January 10, 1991.

The court finds that in May or June of 1990, Mr. Suarez was a resident of Clanton, Alabama. Mr. Suarez was living in the home of Ruby Zeigler, his aunt by marriage. The evidence reveals that during that time there was a meeting between Ms. Zeigler, Mr. Suarez and Winifred Hamilton. The evidence indicates that at that time, Mr. Suarez attempted to change the primary beneficiary of the Liberty National policy to Ruby Zeigler and name her son, Keith Zeigler, as the contingent beneficiary.

At the time of the discussion regarding changing the beneficiary, Mr. Suarez made a statement to both Ms. Zeigler and Ms. Hamilton that shows he intended that the proceeds of the policy, in the event of his death, be *utilized for the benefit of his two minor children.* There is also evidence, and the court finds that Ms. Zeigler agreed, that the money would be used for the benefit of Mr. Suarez's minor children. During the trial of the case, Ms. Zeigler acknowledged her agreement with Mr. Suarez to use the money for the benefit of the children. Ms. Zeigler testified that she intended to apply $25,-000.00 of any recovery in this case for the exclusive benefit and use of the children. Ms. Zeigler was unable to explain how she arrived at that figure. The court finds that there is no firm understanding between Ms. Zeigler and Mr. Suarez as to exactly how much of the proceeds of the policy would go to the exclusive use of the minor children.

Ms. Zeigler provided a home for Mr. Suarez for a period of three months or more. There is further evidence that Ms. Zeigler maintained the policy in force and paid the premiums during the time that Mr. Suarez lived with her and subsequent to the time Mr. Suarez was incarcerated.

Ms. Winifred Hamilton testified that she, as the Liberty National agent, took the application for the policy and subsequently attempted to change the beneficiary on behalf of Mr. Suarez. Ms. Hamilton testified that she was certain that she did not make an error and was not confused as to the paperwork necessary to effectuate the change in beneficiary.

There was evidence presented to indicate that there were changes made to insurance policies on the life of Ms. Zeigler and her son, Keith, at or about the same time as the change on the Suarez policy. According to Ms. Hamilton, contingent beneficiaries were added to those policies. Ms. Cardona attempted to show that Ms. Hamilton was confused by the number of changes in beneficiaries occurring at the same time and improperly filled out the paperwork. The court finds that regardless of whether or not Ms. Hamilton made an error in preparing the paperwork or whether an error was made by Liberty National in failing to effectuate the change, Mr. Suarez did in fact intend to change the beneficiary and did all that he could do and all that was required to effectuate that change.

The evidence reveals that letters were sent to Ruby Zeigler and Keith Zeigler regarding the addition of the contingent beneficiaries from Liberty National. The letters reflect a change in the contingent beneficiary and indicate that the changes occurred on or about June 5, 1990. There was no evidence that the letters were received by Ms. Hamilton.

The evidence shows that there was a discussion between Ms. Zeigler and Ms. Hamilton prior to the death of Mr. Suarez as to whether or not the change had been made. Apparently no follow up was done to determine whether or not the change had been effected as intended by the insured. This failure, however, cannot be blamed on Antonio Suarez, Sr.

According to the Liberty National records, effective as of June 5, 1990, the decedent

made a change in the beneficiary designation; however, the change showed only that Ruby Zeigler was made a contingent beneficiary on the Suarez policy. The records reflect that Ms. Guarina Cardona remained the primary beneficiary. The evidence shows however that on June 5, 1990, the decedent was not living at his address to which the letter was addressed.

Taken as a whole, the evidence indicates that although Mr. Suarez intended to change his primary beneficiary, the Liberty National records never properly reflected the change due to a clerical error.

## CONCLUSIONS OF LAW

### The Change of Beneficiary Issue

The court having found that Mr. Suarez did in fact intend to change his primary beneficiary to Mrs. Ruby Zeigler, it appears that under Alabama law, the designation of a beneficiary of a life insurance policy, including the changes thereof, are governed by the provisions of the policy itself. *Gibson v. Henderson*, 459 So.2d 845 (Ala.1984). Strict compliance with the policy may be waived by the insurer. *Whitman v. Whitman*, 225 Ala. 113, 142 So. 413 (Ala. 1932). Where an insurance company interpleads life insurance proceeds, it is held to have waived requirements under the policy as to the change of beneficiary. *McDonald v. McDonald*, 212 Ala. 137, 102 So. 38 (1924). As it relates to changing of beneficiaries, the law of equity regards as having been done that which ought to be done [1] and the courts will give effect to the intention of the insured by holding that a change of beneficiary has been accomplished where he or she has done all that he or she could do in order to comply with the provisions of the policy. *Gibson v. Henderson*, 459 So.2d 845, 847 (Ala.1984). The beneficiary of an insurance policy may be effectively changed if the insured substantially complies with the provisions of the policy for such change of beneficiary. The test of substantial compliance is whether the insured has done everything that he could do to make that change. *Gibson*, supra, at 848.

In this case, Mr. Suarez met with his insurance agent and requested that the change be made in the beneficiary. Mr. Suarez signed the form necessary to effectuate the change and left it to the agent to submit the form on his behalf. The court is satisfied that due to a clerical error on the part of Liberty National, the beneficiary designation was not correctly changed to reflect the intent of Mr. Suarez.

Based upon these facts and conclusions of law, it is the court's opinion that Mr. Suarez did all that he could do in order to effectuate the change to name Ruby Zeigler as his primary beneficiary. Having found that Mrs. Zeigler is the proper beneficiary on the policy, the court now directs its attention to the issue of constructive trust.

### The Constructive Trust Issue

In this case, the minor children of Antonio Suarez, Sr., contend that the proceeds of the policy should be subject to a constructive trust. The evidence is undisputed that Mr. Suarez wanted the proceeds of his life insurance policy to go to the benefit of the children. Testimony by both Mrs. Ruby Zeigler and Mrs. Winifred Hamilton who were present at the time the beneficiary was changed indicated that his primary purpose of changing the beneficiary was to make certain that the children would be provided for from the policy proceeds. Mrs. Zeigler testified that it was her intention to utilize $25,000.00 of any recovery to go directly to the benefit of the children. There was no discussion with Mr. Suarez as to the exact manner which the money should be divided between Mrs. Zeigler and the children. The children clearly have an equitable interest in the proceeds of the policy since it was their father's intent that the policy proceeds be used for them. A constructive trust may be imposed on life insurance proceeds even though the designated beneficiary is not guilty of fraud or wrongdoing. *Brown v. Brown*, 604 So.2d 365 (Ala.1992). The court finds that to allow the total proceeds to be turned over to Mrs. Zeigler would not be honoring or effectuating the intent of Mr. Suarez, nor would it comply with the agree-

1. Story, *Equity Jurisprudence*, § 64.

ment that Mr. Suarez had with Mrs. Zeigler at the time he made her the primary beneficiary of the policy. Although the court does not find actual or intentional fraud on the part of Mrs. Zeigler, a constructive trust may be imposed to prevent unjust enrichment, without regard to actual fraud. *Cole v. Adkins,* 358 So.2d 447 (Ala.1978). This court has the inherent authority in equity to mold its judgment so as to adjust the equities of all parties and to meet the obvious necessities of each situation. Rule 1, *Fed.R.Civ.P. Donovan v. Robbins,* 752 F.2d 1170, 1176 (7th Cir.1985). *See, also, American Family Care, Inc., v. Irvin,* 571 So.2d 1053 (Ala.1990).

■ The court hereby finds that Mrs. Zeigler did in fact provide a service to Mr. Suarez by providing him with a home and paying the premiums on his life insurance policy for a period of time. Therefore, the court feels that Mrs. Zeigler is entitled to some benefit for her efforts and hereby grants to Mrs. Zeigler the sum of $10,000.00 from the insurance proceeds. The court imposes a constructive trust for the use and benefit of Antonio Suarez, Jr., and Ebono Suarez, on the remainder of the life insurance proceeds together with any accrued interest now being held by the clerk of the court. The proceeds of the trust will be administered according to the laws of the State of Alabama by the Probate Court of the county in which said children reside. The selection of the conservator for said trust estate is left to the sound discretion of the probate judge and parties thereto.

### Attorneys' Fees and Costs of Court

Although dismissed from the suit as a party plaintiff, Liberty National was represented by legal counsel at trial. The court finds that the clerical error on the part of Liberty National caused the necessity of this interpleader action and costs associated therewith. The court therefore orders that all costs of this action be taxed to Liberty National including a reasonable attorney's fee for the guardian ad litem. If the fee of the guardian ad litem cannot be agreed upon by the parties, the court will entertain a motion to determine the same.

### ORDER

In accordance with the opinion entered this date, it is CONSIDERED, ORDERED and ADJUDGED AS FOLLOWS:

1. Ruby Zeigler shall receive the sum of $10,000.00 from the insurance proceeds which are the subject of this litigation.

2. The remainder of said insurance proceeds, together with the interest on the entire amount held by the clerk, are imposed with a constructive trust for the use and benefit of Antonio Suarez, Jr., and Ebony Suarez, said proceeds to be paid into the probate court of the county in Alabama where said children reside, to be administered according to the laws of the State of Alabama, with the selection of the conservator left to the sound discretion of the probate judge and parties thereto.

3. Liberty National Life Insurance Co., Inc., shall pay the costs herein taxed together with a reasonable attorney's fee for the guardian ad litem.