PILOT LIFE INSURANCE COMPANY, demandante y recurrida, *v.* JOSEFA CRESPO MARTÍNEZ, ALMA DORIS LEQUERIQUE IRIZARRY, DORIS MIRANDA, demandadas y recurrentes.

*Números:* RE-87-569      *Resueltos:* 13 de julio de 1994
RE-87-570

628

*Juan Jesús Ramírez* y *Víctor E. Báez,* abogados de la parte recurrente; *José H. Vivas,* abogado de la parte recurrida.

El Juez Presidente Señor Andréu García emitió la opinión del Tribunal.

El 11 de noviembre de 1976 Pilot Life Insurance Co. (en adelante Pilot) expidió la póliza de seguro de vida núm. 00894186 a favor de Enrique Talavera Crespo (en adelante Talavera). Dicha póliza era por la suma de cincuenta mil dólares ($50,000).[1] Al momento de expedirse, el señor Talavera designó como beneficiaria a su entonces esposa Alma Doris Lequerique (en adelante Lequerique)[2] y como beneficiarios alternos a sus hijos Víctor C., Geraldo E., Carlos R. y María S., todos de apellidos Talavera Lequerique.[3]

El 23 de enero de 1984 Lequerique presentó una demanda de divorcio por la causal de trato cruel. Además, solicitó la división de los bienes gananciales y gestionó una orden protectora a los efectos de prohibirle a Talavera enajenar, gravar, vender, pignorar o en alguna forma menos-

---

[1] Según los términos de esta póliza Talavera realizaba pagos mensuales de ciento cuarenta dólares con ochenta centavos ($140.80). La fecha de vencimiento era el 11 de noviembre de 2027.

[2] Talavera y Lequerique contrajeron matrimonio el 7 de marzo de 1960. No otorgaron capitulaciones matrimoniales.

[3] Al momento de contraer matrimonio con Lequerique, éste era viudo y tenía dos (2) hijos de un matrimonio anterior.

cabar los bienes pertenecientes a la sociedad de gananciales compuesta por ellos. El Tribunal Superior, Sala de Mayagüez (Hon. Juan E. Lugo Rodríguez, Juez), decretó roto y disuelto el vínculo matrimonial el 23 de agosto de 1984. En su sentencia dispuso también que continuara en efecto la orden protectora anteriormente expedida.

Talavera contrajo nuevas nupcias el 7 de diciembre de 1985 con Doris Miranda (en adelante Miranda).[4] A raíz de dicha unión, Talavera cambió la designación de beneficiario de la póliza para instituir a Miranda como beneficiaria principal y a su señora madre Josefa Crespo Martínez (en adelante Crespo) como beneficiaria alterna.[5] Mas, el 11 de mayo de 1986, Talavera tramitó nuevamente un cambio de beneficiario en cuanto a Miranda, de quien también se divorció.[6] Pidió, entonces, que se incluyera como única beneficiaria a su madre (Crespo).

Así las cosas, el 11 de junio de 1986 al salir de una vista en el Tribunal Superior, Sala de Mayagüez, sobre incumplimiento en el pago de alimentos, Talavera acechó e hirió de gravedad a Lequerique al dispararle en cinco (5) ocasiones. Acto seguido, se suicidó.

Al morir Talavera, Crespo y Miranda —cada una alegando que tenían derecho al importe de la póliza— presentaron la correspondiente reclamación ante la aseguradora. Al tener serias dudas sobre a quién le correspondía el importe de la póliza, Pilot presentó una demanda de consignación del importe, a tenor con lo establecido en el Art. 1130 *et seq.* del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3180 *et seq.*, y la Regla 19 de Procedimiento Civil, 32

---

[4] Tomando en consideración los términos de la póliza antes mencionados (véase el esc. 1), las primas eran pagadas durante la vigencia de este matrimonio.

[5] Este cambio se solicitó el 7 de febrero de 1986. Para realizarlo fue necesario presentar una copia de la sentencia de divorcio de Talavera y Lequerique.

[6] En esta ocasión también fue necesario presentar una copia de la sentencia de divorcio.

L.P.R.A. Ap. III.([7]) En ella figuran como demandadas Lequerique, Miranda y Crespo.

Después de emplazadas dichas demandadas, Crespo solicitó que se desestimara la demanda en cuanto a Lequerique ya que, al no ser beneficiaria, carecía de derecho alguno sobre la póliza. Más tarde Miranda hizo la misma petición y Lequerique solicitó sentencia sumaria a su favor, alegando que la póliza de seguro era un bien ganancial de la sociedad constituida por ella y el causante, por lo que éste estaba impedido de cambiar el beneficiario sin el consentimiento de ella.

Luego de examinar las anteriores mociones, el tribunal de instancia declaró no ha lugar a las mociones de desestimación y con lugar la moción de sentencia sumaria de Lequerique. Determinó que siendo la póliza de carácter ganancial, le correspondía la mitad a Lequerique y la otra mitad a Miranda.

No conformes con dicha determinación, recurren individualmente Crespo y Lequerique ante este Foro mediante recursos de revisión. Siendo ambos recursos sobre el mismo asunto y la misma controversia, los consolidamos y discutimos conjuntamente.([8])

---

([7]) Este procedimiento de la Regla 19 de Procedimiento Civil, 32 L.P.R.A. Ap. III, se conoce comúnmente como *interpleader.*

([8]) Los errores planteados son los siguientes:

Lequerique: "Incidió el tribunal al reconocer a un esposo divorciado (TALAVERA), cuyos gananciales están en proceso de liquidarse judicialmente, la facultad de cambiar como beneficiaria de su póliza de vida ganancial a su antigua esposa (LEQUERIQUE) sustituyéndola por su flamante esposa MIRANDA en abierta violación a la Orden Protectora que, para evitar menoscabo de los bienes gananciales a repartirse, mantenía en vigor el tribunal." (Énfasis suprimido.) Caso Núm. RE-87-569, Petición de revisión, pág. 5.

Crespo: "1. Erró el Tribunal a quo al declarar que el producto de la póliza al momento de su liquidación era ganancial.

"2. Erró el Tribunal a quo al concluir que la señora Doris Miranda era beneficiaria de la póliza y no concluir que la verdadera intención del señor Talavera era beneficiar a su madre la señora Crespo Martínez.

"3. Erró el Tribunal a quo al dictar sentencia sumariamente a tenor con la Regla 36 de las de Procedimiento Civil." Caso Núm. RE-87-570, Escrito de revisión, pág. 7.

## I

En un sinnúmero de ocasiones hemos establecido que el propósito principal de la moción de sentencia sumaria, según dispone la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Worldwide Food Dis., Inc. v. Colón et al.*, 133 D.P.R. 827 (1993); *González v. Alicea, Dir. Soc. Asist. Legal*, 132 D.P.R. 638 (1993); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83 (1987). Utilizada correctamente, contribuye a descongestionar los calendarios judiciales. *Rivera et al. v. Superior Pkg., Inc. et al.*, supra, pág. 133; *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867, 873 (1992).

Las reglas disponen que la parte solicitante tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que procede dictar sentencia a su favor como cuestión de ley. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Tello, Rivera v. Eastern Airlines*, supra, pág. 86. La parte opositora se ve entonces en la posición de poner en controversia los hechos presentados por el promovente. *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249, 256 (1992); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273, 281 (1991).

El tribunal de instancia actuó correctamente al utilizar el procedimiento de sentencia sumaria para resolver la controversia entre las partes. No existe controversia real sobre los hechos materiales de este caso. Lo que se requería era hacer determinaciones del derecho aplicable en cuanto a la naturaleza de la póliza y la distribución de sus beneficios. Por lo tanto, pasemos a discutir dichas interrogantes.

## II

■   La jurisprudencia existente en nuestra jurisdic-ción relacionada con el tema de seguros de vida ha versado mayormente en torno al pago de los beneficios de éstos. El aspecto de la gananciabilidad o no gananciabilidad de una pó-liza ha sido tratado en aquellos casos en que era necesario determinar a quién se le otorgarían los beneficios.

■   Hasta 1958 el Código de Comercio regulaba los contratos de seguro. Particularmente en cuanto a los con-tratos de seguro de vida establecía que "[l]as cantidades que el asegurador debe entregar a la persona asegurada, en cumplimiento del contrato, serán propiedad de ésta aun contra las reclamaciones de los herederos legítimos y acreedores de cualquier clase del que hubiere hecho el se-guro a favor de aquélla".[9] Por lo tanto, el beneficiario era el único con derecho a recibir el monto de la póliza y la jurisprudencia interpretativa de dicho artículo así lo sostenía.[10]

En *Cádiz v. Jiménez*, 30 D.P.R. 34 (1921), se apelaba del procedimiento de distribución de una herencia. La viuda del causante reclamaba que se colacionara el monto de la póliza adquirida por éste. El tribunal de instancia sólo trajo a colación una pequeña suma equivalente a las pri-mas pagadas durante el matrimonio. La cuestión principal era si debía considerarse o no la póliza como un bien ganancial. Indicó entonces este Tribunal que lo que regía los contratos de seguro de vida era el Código de Comercio y no el Código Civil, debido a que éste era un contrato mercantil. Por lo tanto, la presunción de gananciabilidad de

---

[9] Art. 338 del Código de Comercio de 1932 (26 L.P.R.A. sec. 1291 (ed. 1955)).

[10] Véanse, entre otros: *Wood v. Tribl. Contribuciones, y Tes., Int.*, 71 D.P.R. 233 (1950); *Oliver v. Oliver*, 57 D.P.R. 491 (1940); *Espósito v. Guzmán*, 45 D.P.R. 796 (1933); *Schlüter v. Sucn. Díaz*, 41 D.P.R. 884 (1931); *Cádiz v. Jiménez*, 30 D.P.R. 34 (1921).

un bien por haber sido adquirido con dinero ganancial no imperaba en esta situación.

■ En *Espósito v. Guzmán*, 45 D.P.R. 796, 801 (1933), se reconoció que en todo contrato de seguro de vida existe un beneficiario y éste es el llamado a disfrutar el producto de la póliza, sin tener que tomar en consideración el origen del dinero con el que se pagaron las primas. Además, aún cuando en el mencionado caso los beneficiarios eran los herederos, la decisión estuvo encaminada a destacar que la intención del legislador fue la de permitir que este tipo de contrato se realizara sin traba alguna. Por lo tanto, sostuvimos que no podía obviarse la citada disposición del Código de Comercio tratando de adjudicar el dinero conforme a una división usual de bienes gananciales. *Espósito v. Guzmán*, supra, pág. 802.

■ Al sustituir el Código de Seguros por el Código de Comercio en la reglamentación del negocio de los seguros de vida se mantuvo la naturaleza privilegiada del producto de la póliza.[11] El legislador no realizó cambio alguno respecto a esta materia por lo que se entiende que el monto de la póliza continúa íntegramente en manos del beneficiario, independientemente de los reclamos de algún heredero o del cómputo ganancial. *Vda. de Pizá v. Srio. de Hacienda*, 86 D.P.R. 211, 215 (1962).

Posteriormente se volvió a considerar este tipo de situación en *Vda. de Méndez v. Tribunal Superior*, 102 D.P.R. 553 (1974). A esos efectos se citó a Manresa, exponiendo lo siguiente:

"*Seguros sobre la vida.*—La cantidad satisfecha por una compañía aseguradora al fallecimiento del asegurado, ¿debe considerarse ganancial? ....
Desde luego, el capital del seguro sustituye a las primas que hay que pagar, y el derecho a aquél se adquiere desde el mo-

---

[11] Véase Art. 11.330 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1133.

mento del contrato, pues desde él cabe la facultad de disponer, y si ocurre el fallecimiento puede exigirse el pago. Se trata, pues, de una adquisición a título oneroso hecha durante el matrimonio, aunque el plazo señalado para el cumplimiento de la obligación sea el de la muerte de uno de los cónyuges, hecho que extingue la sociedad. Así considerada la cuestión, puede decirse resuelta en los artículos 1.396 y 1.401. Si las primas se pagan con el capital privativo del marido o de la mujer, el capital del seguro le pertenece privativamente. Si se paga a costa del caudal común o no puede justificarse la procedencia del dinero, la adquisición es ganancial."[12]

■   Valga señalar que en este caso se suscitó una situación muy particular. Aquí un empleado público, acogido al sistema de seguros de la Asociación de Empleados del E.L.A., falleció sin haber hecho designación de beneficiario para tal seguro. Resolvimos que este tipo de contrato queda excluido del alcance del Código de Seguros por estar regulado por legislación especial y, en ausencia de una provisión específica al amparo de la ley especial que establece la Asociación de Empleados del E.L.A., aplicamos supletoriamente las normas del Código Civil para la distribución de los beneficios del seguro. Por lo tanto, concluimos que habiéndose adquirido la póliza con dinero ganancial (aportaciones salariales) su importe se entendía parte del caudal de la sociedad de gananciales y se distribuiría conforme a las normas que regulan dicha sociedad.

■   Sin embargo, la tendencia es a no darle aplicación a tal teoría debido a la naturaleza particular del contrato de seguro. Así lo hemos confirmado interpretando el Art. 11.300 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1130, al resolver que por no disponer expresamente lo contrario se mantiene vigente la interpretación prevaleciente bajo el derogado Art. 338 del Código de Comercio de 1932 (26 L.P.R.A. sec. 1291 (ed. 1955), que otorga al beneficiario una posición superior a la de otros reclamantes en

---

[12] *Vda. de Méndez v. Tribunal Superior*, 102 D.P.R. 553, 555 (1974).

cuanto al monto de la póliza. *Fernández Vda. de Alonso v. Cruz Batiz*, 128 D.P.R. 493, 496 (1991).

■ A base de lo anteriormente expuesto, es forzoso concluir que el tribunal de instancia erró al declarar que el monto de la póliza al momento de su liquidación era ganancial, utilizando como fundamento para ello lo resuelto en *Vda. de Méndez v. Tribunal Superior*, supra, sin considerar la situación particular suscitada en ese caso. Debe quedar claro, pues, que en Puerto Rico el beneficiario es el *único* con derecho a recibir el producto de una póliza de seguro de vida.

## III

Por su naturaleza, la vigencia de una póliza de seguro de vida se desarrolla en dos (2) etapas: una durante la vida del asegurado y la otra a la muerte de éste. Durante la primera etapa el que aparece como dueño es el titular de la póliza y, como tal, tiene todos los derechos que ésta le confiere. No obstante, una vez muere el asegurado, comienza la segunda etapa. Es entonces que el beneficiario adquiere un derecho propio y distinto de aquel perteneciente al tomador del seguro sobre el producto de la póliza. *Fernández Vda. de Alonso v. Crvz Batiz*, supra, pág. 496. En esta etapa, como ya establecimos, la reclamación del beneficiario es superior a la de cualquier otro con interés en esa suma de dinero.

La determinación de a quién pertenece la póliza durante la primera etapa cobra importancia en cuanto a los derechos que se tienen sobre ella. Únicamente el titular o dueño de la póliza podrá ejercerlos.[13] Entre los derechos

---

[13] En *Succession of Jackson*, 402 So.2d 753, 756 (1981), se indica que el dueño de un póliza goza, entre otros, de los derechos siguientes:

"... [T]he right to cash surrender value, receive dividends, assign or pledge policy proceeds, borrow against the policy, name and change the beneficiary, and execute conversion rights."

de éste se encuentra el poder de realizar cambios en la designación de beneficiario. Este derecho, particularmente, se rige por lo establecido en el contrato de seguro. Éste puede ser reservado, condicionado o renunciado.[14] 5 *Couch on Insurance 2d* Sec. 28:36 (1984); 2 *Appleman, Insurance Law and Practice* Sec. 901 (1966).

Habiéndose adquirido la póliza en este caso durante la vigencia del matrimonio Talavera-Lequerique, debemos determinar si era el señor Talavera dueño de la póliza o si, por el contrario, pertenecía a la sociedad de gananciales compuesta por éstos. Así podremos determinar quién tenía derecho sobre la disponibilidad de la póliza y la designación de beneficiarios.

A tenor con el Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641, un bien adquirido por título oneroso durante el matrimonio a costa del caudal común es un bien ganancial y, por lo tanto, ambos cónyuges son dueños de él. No obstante, hemos establecido que es necesario eximir de dicha clasificación ciertos bienes por razón de su finalidad y naturaleza como, por ejemplo, los planes de pensiones,[15] y las pensiones o rentas vitalicias.[16] La doctrina considera que la naturaleza personalísima de dichos bienes, basada en el carácter *intuitu personae* de éstos, los excluye de la masa común del régimen de la sociedad de gananciales. J.L. LaCruz Berdejo y F.A. Sancho Rebullida, *Derecho de Familia*, Barcelona, Librería Bosch, 1966, págs. 203–204;

---

[14] De no existir cláusula al respecto en el contrato o por medio de algún estatuto, el derecho de realizar cambios en la designación del beneficiario no existe. Entonces el beneficiario original adquiere un derecho que no puede ser afectado por una designación posterior. 5 *Couch on Insurance 2d* Sec. 28:37 (1984).

En la mayor parte de las ocasiones las limitaciones sobre este derecho surgen debido a los derechos de los acreedores, la inelegibilidad de un beneficiario, los principios de la sociedad de gananciales o lo establecido en las sentencias de divorcio. *Couch*, supra, Sec. 28:36.

[15] Véase *Maldonado v. Tribunal Superior*, 100 D.P.R. 370 (1972), y su progenie.

[16] Véase *Benítez Guzmán v. García Merced*, 126 D.P.R. 302 (1990).

J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1985, T. IV, pág. 133; Planiol, *Civil Law Treatise*, Parte 1; A. Colin y H. Capitant, *Curso Elemental de Derecho Civil*, Madrid, Ed. Reus, 1982, T. VI, pág. 163, G. Tedeschi, *El régimen patrimonial de la familia*, 1954, pág. 372.

Planiol y Ripert nos dicen que "si las pensiones por retiro y otras similares tienen el carácter de bienes propios no es debido a su intransmisibilidad, sino a su finalidad, que es estrictamente personal". (Traducción nuestra.) *Planiol*, supra, pág. 232.

Puig Brutau expone también idéntico criterio al expresar que "[p]or la misma inherencia a la persona no pueden formar parte de un patrimonio compartido por varios titulares. La defensa de la personalidad humana ha de sobreponerse a normas puramente matrimoniales". Puig Brutau, *op. cit.*

Particularmente en cuanto a los seguros de vida dice Tedeschi, *op. cit.*, pág. 372:

[P]arece ser que no entran en comunidad tampoco los bienes que, aunque transmisibles, están, sin embargo, destinados a asegurar una utilidad personal al cónyuge, aún después de la disolución de la comunidad; de manera que no se puede considerar conforme a la voluntad de los contrayentes que, al disolver la comunidad, competan en parte al otro cónyuge. Tales serían, por ejemplo... el seguro sobre la vida que un cónyuge haya contratado en favor del otro cónyuge para el caso de la propia premoriencia ... cuando no se haya disuelto todavía la comunidad. Si las primas del seguro se hubieren pagado con dinero de la comunidad, el derecho al seguro seguiría siendo propio, salvo reembolso de las primas a la comunidad.

En fin, no empece el modo de adquisición, el derecho sobre la titularidad de una póliza de seguro de vida es personalísimo. Nunca acrecerá el haber común. Será titular aquel sobre la vida del cual se haya tomado el seguro

por razón de la relación tan íntima entre su persona y la existencia del contrato.([17])

■ Ahora bien, como se ha resuelto en situaciones similares, habrá que acreditarse a favor de la sociedad de gananciales la cantidad que se haya invertido de los bienes de ésta en concepto de las primas pagadas durante el matrimonio. La comunidad tiene derecho al reembolso por dicha cantidad. LaCruz Berdejo y Sancho Rebullida, *op. cit.*, pág. 205; J. Luis de los Mozos, *Comentarios al Código Civil y compilaciones forales*, 1984, pág. 166.

■ A la luz de lo anteriormente señalado, surge claramente que es de carácter privativo la titularidad de una póliza de seguros, aun cuando ésta se haya adquirido durante el matrimonio del asegurado. Y será el cónyuge que contrató con la aseguradora quien podrá disponer de la póliza como mejor le parezca, ya que su vida es lo que le da vigencia a ese contrato.([18])

Por lo tanto, siendo Talavera el asegurado, y por ende dueño de la póliza, estaba en pleno derecho al realizar el cambio de beneficiario sin necesidad de consultarlo con su primera esposa. Ni ella ni la sociedad de gananciales compuesta por ellos tenía derecho alguno sobre la póliza, con excepción de un crédito por las primas pagadas al momento de la disolución del matrimonio.

■ Además, como el producto de la póliza no forma parte del caudal ganancial, la disposición del Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3672, que cita el tribunal de instancia no es de aplicación. Así las cosas, un cambio realizado en la designación de beneficiario no implica una disposición de un bien mueble ganancial. Entonces, es lógico

---

([17]) Un contrato de seguro es aquel "mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Art. 1.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 102. En los seguros de vida, el suceso incierto previsto que activa la obligación de indemnizar es la muerte del asegurado.

([18]) Art. 4.030 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 403.

concluir que no será necesario el consentimiento del otro cónyuge para realizar dicho cambio.

De igual forma, no era de aplicación, en cuanto a la póliza, la orden protectora emitida por el tribunal a los efectos de evitar el menoscabo de los bienes gananciales que habían de repartirse entre Talavera y Lequerique, porque al morir el señor Talavera el producto de la póliza no formaba parte de los bienes que se repartirían. Consecuentemente no se cometió el error alegado por la señora Lequerique en cuanto al reconocimiento por parte del tribunal de instancia de la facultad de cambiar beneficiario ejercida por el señor Talavera.

## IV

Finalmente queda por resolver la cuestión del último cambio en la designación de beneficiario hecho por Talavera. Alega la recurrente Crespo que se debió haber determinado que la intención de Talavera era que ella recibiera el importe de la póliza y no su ex esposa Miranda, quien aparecía anteriormente como beneficiaria.

Sobre este particular concluyó el tribunal de instancia que nunca se llegó a procesar el cambio por la aseguradora y por lo tanto no es válido dicho cambio. Ahora bien, por no tener en nuestra jurisdicción jurisprudencia aplicable y como nuestro Código de Seguros recoge "el fruto de la experiencia obtenida en diferentes estados de la Unión",[19] nos remitiremos a las opiniones emitidas al respecto en dichas jurisdicciones.

▪ Aun cuando un cambio de beneficiario no se haya procesado con anterioridad a la muerte del asegurado, esto

---

[19] Vistas sobre el P. de la C. 85 (9 Diario de Sesiones de la Asamblea Legislativa (Cámara), T. 2, pág. 561 (1957). Además, el encargado de redactar el anteproyecto, el Lcdo. Robert D. Williams, Asesor del Departamento de Seguros del Estado de Washington, fue el que preparó los anteproyectos de los códigos de seguros de los estados de Washington, Kentucky, Arizona y Michigan.

no quiere decir que dicho intento sea inválido. *Tal cambio puede ser efectivo si se ha cumplido sustancialmente con los demás requisitos establecidos por la compañía aseguradora a esos efectos.* Esta doctrina, conocida en las jurisdicciones norteamericanas como *substantial compliance rule*, se basa en principios de equidad que aceptan como hecho aquello que debe hacerse y compele a los tribunales a validar la intención del asegurado al verificar que éste cumplió con la mayor parte de aquellos requerimientos de la póliza. Una aseguradora no puede caprichosamente negarse a aceptar el cambio solicitado por el asegurado. *Couch*, supra, Sec. 28:65. Por lo tanto, si el asegurado ha cumplido sustancialmente con los requisitos necesarios y luego muere, debe entenderse que el cambio es válido y la aseguradora viene obligada a honrar dicho cambio. Íd., Sec. 28:66.

Existen cuatro (4) categorías para medir la sustancialidad del cumplimiento con los requisitos de una póliza.[20] La primera de éstas agrupa aquellas situaciones en que el asegurado ha expresado su intención de hacer el cambio pero no intentó requerírselo a la aseguradora. En segundo lugar, están aquellas situaciones en que el asegurado realizó actos conducentes al cumplimiento de los requisitos pero no tramitó la solicitud completa para el cambio. En tercer lugar, aquellos casos en que el asegurado hizo todo lo requerido en la póliza pero no pudo hacerle llegar a la compañía los documentos necesarios para su aprobación. Y, finalmente, cuando se cumplieron todos los requisitos pero el asegurado muere antes de que la compañía apruebe el cambio. *Couch*, supra, Sec. 28:74.

Aun cuando la jurisprudencia sobre esta materia ha liberalizado la posición hacia una interpretación

---

[20] *Couch*, supra, Sec. 28:74. Esta división, resultado de la agrupación de la jurisprudencia relacionada con la materia, no es tan clara y precisa como las categorías expuestas. La base de éstas es si el asegurado ha intentado realizar un cambio *bona fide*.

más laxa de lo que constituye un esfuerzo razonable por parte del asegurado para realizar dicho cambio, *Couch*, supra, Sec. 28:74, en las primeras dos (2) situaciones los cambios casi nunca se entenderán realizados. *Equitable Life Assur. Soc. of the U.S. v. McKay*, 861 F.2d 221 (9no Cir. 1988); *Carruthers v. $21,000, etc.*, 434 A.2d 125 (1981); *Cook v. Equitable Life Assur. Soc. of U.S.*, 428 N.E.2d 110 (1981); *Barber v. Woodmen of the World Life Ins.*, 364 S.E.2d 715 (1988). El análisis de la tercera de dichas situaciones dependerá de la razón por la cual no llegó la solicitud de cambio a la compañía aseguradora. Si fue debido a la negligencia del asegurado o no hay explicación razonable, usualmente no procederá el cambio. *Prudential Ins. Co. of America v. Bannister*, 448 F. Supp. 807 (W.D. Pa. 1978); *Travelers Ins. Co. v. Smith*, 435 N.E.2d 1188 (1982); *Aetna Life Ins. Co. v. Brooks*, 292 N.W.2d 532 (1980). Ahora bien, si se realizaron todos los trámites necesarios pero el asegurado muere antes de que la aseguradora pueda aprobar el cambio, procede que éste se efectúe. No obstante es imperativo que los trámites que queden por hacer sean puramente ministeriales.[21] *Norris v. Norris*, 145 F.2d 99 (5to Cir. 1944); *Prudential Ins. Co. of America v. Moore*, 145 F.2d 580 (7mo Cir. 1944); *Mutual Life Ins. Co. v. Corodemos*, 7 F. Supp. 349 (D. Mass. 1934).

Las anteriores categorizaciones a los fines de determinar si hubo un cumplimiento sustancial con los requisitos impuestos por la aseguradora para el cambio de beneficiario son el resultado de la necesidad de hacer una determinación de umbral previa compuesta de dos (2) fases: primero hay que determinar si el tomador o dueño de la póliza demostró claramente su intención de realizar el

---

[21] La aprobación o *endorsement* de la póliza es una gestión puramente ministerial. *Shaw v. Loeffler*, 796 P.2d 633 (Okl. 1990); *Blount v. Life Ins. Co. of Georgia*, 228 S.E.2d 140 (1976); *Pabst v. Hesse*, 173 N.W.2d 925 (1970); *Lundeen v. Cordner*, 354 F.2d 401, 403 (8vo Cir. 1966).

cambio de beneficiario y, en segundo lugar, si ejecutó gestiones conducentes a tramitar dicho cambio.(22)

██ Además, se ha interpretado que al una aseguradora consignar en el tribunal la suma de dinero adeudada en concepto del monto de una póliza, y al solicitar del tribunal una determinación en cuanto al "verdadero" beneficiario, tal aseguradora ha aceptado implícitamente la aplicación de la doctrina de cumplimiento sustancial. *Bohannon v. Manhattan Life Ins. Co.*, 555 F.2d 1205, 1210 (5to Cir. 1977); *Zervas v. Zervas*, 338 F.2d 299, 302 (8vo Cir. 1964); *Manhattan Life Insurance Company v. Barnes*, 462 F.2d 629 (9no Cir. 1972); *Messier v. Metropolitan Life Ins. Co.*, 578 A.2d 98, 100 (1990); *Provident Life and Acc. Ins. Co. v. Buerge*, 703 S.W.2d 590, 593–594 (1986).

Más aún, en el caso de *Zervas v. Zervas*, supra, se estableció que el no cumplir con el requisito contractual de la aprobación (*endorsement*) por la compañía aseguradora no acarreaba consecuencia alguna. Este requisito era estrictamente para la protección de la compañía y al presentar la acción de *interpleader* la aseguradora renunciaba a esa protección.

Al amparo de los principios antes enunciados, veamos las gestiones realizadas por el señor Talavera para determinar si procede aplicar la referida doctrina.

El contrato de seguros suscrito por el señor Talavera establece, en cuanto al cambio de beneficiario, lo siguiente:

> ... CHANGE OF BENEFICIARY—Subject to the interest of any assignee and if the right to change the Beneficiary has been reserved, the Owner during the lifetime of the Insured may change and successively change the Beneficiary .... A change in Beneficiary must be requested in writing on a form satisfactory to the Company and filed at its Home Office accompanied by this policy for endorsement. The change will not take effect

---

(22) En los tribunales estatales y federales a esto se le conoce como el *two prong test*. Véanse, entre otros: *Maisonet Pérez v. Metropolitan Life Ins. Co.*, 820 F. Supp. 640 (D. P.R. 1993); *Zeigler v. Cardona*, 830 F. Supp. 1395 (M.D. Ala. 1993); *Bohannon v. Manhattan Life Ins. Co.*, 555 F. 2d 1205 (5to Cir. 1977).

until endorsed on this policy by the Company, but when so endorsed it shall be effective as of the date of the request for change but without prejudice to the Company on account of any action taken by the Company before such endorsement. Caso Núm. RE-87-570, Anejo B, pág. 20.

Talavera completó el formulario para el cambio de beneficiario el 11 de mayo de 1986. Éste fue recibido en las oficinas centrales de Pilot el 19 de mayo de 1986. Se le solicitó entonces a Talavera que enviara copia de la sentencia de divorcio para efectos de la división de bienes gananciales en cuanto a la póliza en cuestión. Dicha sentencia se recibió en las oficinas centrales de Pilot el 13 de junio de 1986, dos (2) días después de la muerte de Talavera.

Esto, claramente, demuestra la intención de Talavera de cambiar la designación de beneficiario. Además, cumplió con todos los requerimientos de la compañía de seguros para realizar dicho cambio. De no haber fallecido éste, el cambio se hubiera procesado como de costumbre. Lo único que restaba realizar era la aprobación del cambio por la aseguradora, lo cual, según hemos señalado, es una función puramente ministerial.[23] Siendo esto así, la aseguradora estaba en la obligación de realizar el cambio. Además, al presentar la demanda de consignación (*interpleader*) y solicitar del tribunal una determinación sobre el beneficiario, Pilot renunció a lo establecido en su póliza en cuanto al requisito de aprobación previa.

Por lo tanto, procede la determinación de que en efecto la señora madre del asegurado, doña Josefa Crespo Martínez, es la única beneficiaria del producto de la póliza en cuestión.

A tenor con lo antes expuesto, *se dictará sentencia que revoque la sentencia del tribunal de instancia y que ordene el pago del monto de los beneficios de la póliza a la señora Crespo Martínez. Se devolverá el caso al tribunal de instancia para que determine éste el monto de las participaciones*

---

[23] Véase esc. 20.

*que corresponden a las señoras Lequerique y Miranda en el crédito que tienen las respectivas sociedades legales de gananciales constituidas por éstas mediante sus matrimonios con Talavera, en las primas pagadas por cada una de dichas sociedades.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri.

Estoy de acuerdo con los diversos pronunciamientos normativos que aparecen en la opinión mayoritaria. Éstos han sido formulados con arreglo a principios y conceptos de derecho positivo que están vigentes en el ordenamiento jurídico del país. Por ello debo suscribir la referida opinión.

No obstante lo anterior, es menester hacer un señalamiento sobre el alcance de lo dispuesto en la opinión del Tribunal. La aplicación de lo que hemos resuelto en el caso de marras a determinadas situaciones especiales que no están presentes aquí puede dar lugar a resultados indeseables o injustos que deben obviarse. Se trata de un asunto que quizás el legislador debe ponderar para realizar las enmiendas aclaratorias que procedan al Código Civil.

En el caso ante nos ahora hemos convalidado que una persona use fondos gananciales para adquirir una póliza de seguro de vida a favor de su madre, *sin el consentimiento de su cónyuge*, y sin que dicho cónyuge sea beneficiario, sujeto únicamente a la limitación de que al momento de la disolución de la sociedad legal de gananciales se acreditará a ésta lo correspondiente a las primas del seguro pagadas con bienes comunales.

Este resultado es conforme a los Arts. 91 y 1313 del Código Civil, 31 L.P.R.A. secs. 284 y 3672, que permiten que cualquiera de los cónyuges enajene bienes muebles o haga compras con fondos gananciales, *sin el consentimiento del otro cónyuge, cuando se trata de cosas personales* o destinadas al uso de la familia. La compra de una póliza de seguro sobre la vida propia se estima convencionalmente como un asunto personalísimo y, por ende, sujeto a las referidas disposiciones del Código Civil que exceptúan tales casos del requisito del consentimiento del otro cónyuge.

Ahora bien, no es lo mismo que una persona adquiera una póliza de seguro de vida a favor del cónyuge, a favor de sus hijos, o incluso a favor de sus padres o hermanos, a que dicha póliza se adquiera a favor de terceros totalmente extraños al círculo de parientes o de allegados íntimos de la familia. Es decir, cabe cuestionarse si la compra de una póliza de seguro de vida a favor de terceros extraños, con fondos gananciales *pero sin el consentimiento del cónyuge,* debe considerarse como una de las modalidades de la "cosa personal" contemplada en los Arts. 91 y 1313 del Código Civil, *supra.* Igualmente, cabe cuestionarse si un cónyuge, *sin el consentimiento del otro,* puede hacer compras de cosas supuestamente personales que tengan el efecto de crear un riesgo grave de dilapidar el capital ganancial.

En otras palabras, pueden concebirse determinados casos en los cuales la aplicación mecánica de lo que ahora resolvemos en el caso ante nos puede ser contraria al espíritu o sentido del nuevo estado de derecho que se quiso establecer en Puerto Rico en 1976 cuando se enmendó el Código Civil para reconocerle a la mujer una posición de igualdad a la del hombre respecto al gobierno y disposición de los bienes gananciales, y requerir el consentimiento de *ambos cónyuges* para enajenar u obligar a título oneroso *tanto los bienes muebles como los inmuebles de la sociedad de gananciales,* excepto en las dos situaciones antes

aludidas. Art. 1313 del Código Civil, *supra; Aguilú v. Sociedad de Gananciales*, 106 D.P.R. 652 (1977). Podría ocurrir, por ejemplo, que el cónyuge —que de facto administra los bienes gananciales— adquiriese por su sola cuenta una póliza de seguro de alto valor monetario, que requiriese el pago con fondos gananciales de primas tan costosas que menoscabasen seriamente la utilidad familiar de dichos fondos, y que el beneficiario fuese un tercero no sólo extraño al círculo familiar sino incluso antagónico a éste, por la naturaleza infiel de la relación que con este tercero sostiene el cónyuge que adquirió la póliza de seguro. En tal caso, la compra de dicha póliza, sin el consentimiento del otro cónyuge, subvertiría el sentido del nuevo estado de derecho sobre la igualdad del hombre y la mujer dentro de la sociedad legal de gananciales.

Como la situación aludida, u otras similares, no está ahora ante nos, he votado conforme con la opinión mayoritaria, que es correcta generalmente en casos de situaciones ordinarias. Pero me reservo el derecho a votar de otro modo si se tratase de situaciones como las aludidas, a la vez que llamo la atención a los legisladores para considerar si no debe limitarse expresamente el alcance de lo dispuesto en el Código Civil en lo que a este asunto se refiere.