# 2002 DTA 144

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

LA SOCIEDAD DE GANANCIALES COMPUESTA POR LUIS RIVERA NARVAEZ Y SU ESPOSA MAYRA RIVERA RODRIGUEZ, Y ESTOS INDIVIDUALMENTE POR SI, Y COMO PADRES CON PATRIA POTESTAD EN REPRESENTACION DE LOS MENORES LUIS ALEXANDER, JOHN LUIS Y LUIS, DE APELLIDOS RIVERA RIVERA Y EL SEÑOR JUAN RIVERA VARGAS
Demandantes-Recurrentes

v.

EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, POR SU SECRETARIO DE JUSTICIA LIC. ANGEL ROGER SABAT, Y EL DEPARTAMENTO DE SALUD, POR SU SECRETARIA DRA. CARMEN FELICIANO; DOCTOR MANUEL L. ALSINA CAPO Y LA COMPAÑIA DE SEGUROS "*SIMED*"
Demandados-Recurridos

Núm. KLCE-02-00845

San Juan, Puerto Rico, a 25 de septiembre de 2002

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Jueza Pabón Charneco

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Los peticionarios, Sociedad de Gananciales compuesta por Luis Rivera Narváez y su esposa Mayra Rivera Rodríguez, por sí y en representación de los menores Luis Alexander, John Luis y Luis, todos de apellidos Rivera Rivera (los peticionarios), nos solicitan la revocación de la Resolución emitida el 1 de julio de 2002 por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante la misma, dicho foro declaró No Ha Lugar la solicitud de sentencia sumaria presentada por los peticionarios.

Por los fundamentos que expondremos, denegamos la expedición del auto solicitado.

### I

El 14 de mayo de 1994, Luis Rivera Narváez y su esposa Mayra Rivera Rodríguez acudieron con su hijo menor John Luis Rivera Rivera a la Sala de Emergencias del Dispensario Municipal Valentín Tricoche de Ponce. El menor tenía un dolor intenso en su testículo izquierdo. Allí fue atendido por el Dr. Vidal Febles, quien luego de examinar al paciente diagnosticó una condición llamada orquitis o torsión testicular. El doctor orientó a los padres del menor sobre la importancia de realizar una intervención quirúrgica dentro de las próximas cinco (5) o seis (6) horas. La condición podía, de no atenderse, convertirse en una condición más crítica y provocar que el menor perdiera su testículo izquierdo. El Dr. Vidal Febles refirió de inmediato al paciente al Hospital de Distrito de Ponce.

Los peticionarios arribaron al Hospital de Distrito de Ponce, donde se le diagnosticó la presencia de una inflamación testicular. A tenor con dicho diagnóstico, el menor fue dado de alta luego de que le recetaran antibióticos y calmantes. Se requirió una cita a la clínica externa de urología, así como un sonograma testicular.

Debido a la persistencia del dolor, el 16 de mayo de 1994, el menor regresó al Hospital de Distrito de Ponce. Allí lo atendió, por primera vez, el Dr. Manuel F. Alsina Capó, urólogo. Este también diagnosticó una inflamación testicular, recomendó antibióticos y la observación del paciente y regreso para evaluarlo en fecha futura. El sonograma testicular requerido había mostrado signos no específicos de una inflamación del testículo izquierdo.

En vista de que el menor no resistía el dolor, el 19 de mayo de 1994, los peticionarios acudieron nuevamente a la Sala de Emergencias del Hospital de Distrito de Ponce donde el paciente fue admitido al

servicio del Dr. Santiago Correa, urólogo. El 20 de mayo de 1994, este doctor le practicó al menor una intervención quirúrgica conocida como exploratoria testicular y, al percatarse de que se trataba de la condición de torsión testicular, extirpó el testículo izquierdo.

El menor estuvo recluido en el hospital hasta el 23 de mayo de 1994.

El 10 de mayo de 1995, los peticionarios presentaron ante el Tribunal de Primera Instancia demanda en daños y perjuicios por impericia médica contra el Estado Libre Asociado de Puerto Rico (ELA) y el Departamento de Salud del Gobierno de Puerto Rico, por hechos ocurridos en la Sala de Emergencia del Hospital de Distrito de Ponce el 14 de mayo de 1994. En síntesis, los peticionarios alegaron que la falta de cuidado y pericia de los funcionarios del Hospital de Distrito de Ponce culminó en la carencia de un diagnóstico inmediato y de un tratamiento adecuado hacia el menor John Luis Rivera Rivera, provocando que éste sufriera la extirpación y pérdida de su testículo izquierdo. Los demandados contestaron la demanda el 20 de julio de 1995.

Así las cosas, el 9 de julio de 1996, los peticionarios presentaron una moción de sentencia sumaria. Alegaron que no existía controversia sobre la negligencia del ELA, debido que éste, contrario a las normas prescritas por peritos en la materia, no practicó a tiempo la intervención quirúrgica necesaria para tratar la condición de torsión testicular, apartándose así de los estándares aceptados dentro de la profesión médica. En apoyo a su escrito, los peticionarios acompañaron varios documentos de carácter pericial. El ELA se opuso a dicha solicitud. Luego de escuchar las argumentaciones de las partes, el 4 de septiembre de 1996, el tribunal de instancia declaró No Ha Lugar la moción de sentencia sumaria presentada por los recurrentes. Concluyó el tribunal de instancia que "*al presente, existe controversia sobre los hechos y la actuación del demandado en la atención médica brindada al menor John Luis Rivera Rivera. Existen versiones encontradas en cuanto a si el cuadro clínico presentado era uno que debió llevar a los médicos al diagnóstico de **Torsión Testicular** o al de **Epidimitis**. Este asunto debe ser resuelto mediante el desfile de prueba*". ■ (Enfasis original)

Luego de varios trámites procesales, el 11 de octubre de 2000, los peticionarios enmendaron su demanda a los efectos de incluir como demandados al Dr. Manuel L. Alsina Capó y a su compañía aseguradora, por ser éste el urólogo de turno designado para el día 14 de mayo de 1994, fecha en que el menor fue llevado de emergencia al Hospital de Distrito de Ponce. Según alegan los peticionarios en su demanda, a pesar de que dicho galeno estaba de turno, éste no se encontraba físicamente en el hospital y los intentos de conseguirlo resultaron infructuosos. Además, alegadamente cuando éste atendió al menor dos (2) días más tarde, tampoco realizó un diagnóstico acertado. El 29 de enero de 2001, los demandados contestaron la demanda negando las alegaciones esenciales contenidas en la misma.

Posteriormente, y como resultado de una orden emitida por el tribunal de instancia el 29 de enero de 2002, el Dr. Alsina Capó y su aseguradora presentaron una moción mediante la cual informaron haber remitido a los peticionarios un Informe Pericial rendido por su perito el Dr. José R. Guzmán Virella. Basados en el contenido de dicho informe, el 21 de febrero de 2002, los peticionarios solicitaron al tribunal que resolviera sumariamente el aspecto de la negligencia de todos los demandados. Alegaron que el informe pericial del Dr. Guzmán Virella mostraba, fuera de toda duda, la impericia médica incurrida por los demandados y que, toda vez que se trata de la opinión del propio perito de los demandados, el mismo constituia base suficiente para la resolver sumariamente el aspecto sobre negligencia. Los peticionarios acompañaron copia del referido informe. El 17 de mayo de 2002, el ELA presentó oposición a la solicitud de sentencia sumaria señalando que no procede dictar sentencia sumaria en casos donde hay que determinar negligencia o aquilatar el estado mental de las partes. El 21 de mayo de 2002, el Dr. Alsina Capó y su aseguradora presentaron su oposición alegando que los peticionarios habían incluido sólo fragmentos del informe pericial para establecer la negligencia de todos los demandados. Luego de evaluar las posiciones de las partes, el 1 de julio de 2002, notificada el 9 de julio de 2002, el tribunal de instancia declaró No Ha Lugar la moción de sentencia sumaria presentada por los

peticionarios.

Inconformes con dicha determinación, los peticionarios recurren ante nos y señalan el siguiente error:

*"Erró el tribunal de instancia al declarar no ha lugar una sentencia sumaria parcial sobre negligencia basada en el informe escrito del perito médico de la demandada compañía aseguradora SIMED, informe que muestra que no existe hecho material alguno en controversia y concluye que tanto el ELA de PR, como el asegurado Manuel F. Alsina Capó incurrieron en impericia médica."*

Estando en posición de resolver, procedemos.

## II

Nuestro Tribunal Supremo ha elaborado las normas jurídicas pertinentes a las demandas de daños y perjuicios por impericia médica al expresar que para que prospere una acción por impericia médica, al igual que en cualquier otra acción en daños instada al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P. R.A. sec. 5141, el demandante deberá demostrar por preponderancia de prueba, la realidad del daño sufrido, la existencia de un acto negligente, y además, el elemento de causalidad. La prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa; y se requiere que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de una mera especulación o conjetura. *Martí Méndez v. Abréu Feshold*, 143 D.P.R. 520, 526 (1997); *Castro Ortiz v. Mun. De Carolina*, 134 D.P.R. 783, 793 (1994); *Torres Ortiz v. Plá*, 123 D.P.R. 637, 648 (1989); *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639, 649-650 (1988).

Cónsono con lo anterior, el médico tiene el deber de ofrecer a sus pacientes aquella atención médica que, a la luz de los modernos medios de comunicación y enseñanza, y conforme al estado de conocimiento de la ciencia y práctica prevaleciente de la medicina, satisface las exigencias generalmente reconocidas por la propia profesión médica. *Martí Méndez v. Abréu Feshold, supra*, página 526; *Ramos Robles v. García Vicario*, 134 D. P.R. 969, 975 (1993); *Ríos Ruiz v. Mark,* 119 D.P.R. 816, 820 (1987); *López v. Hospital Presbiteriano, Inc.,* 107 D.P.R. 197, 209-210 (1978). De igual manera, al evaluar la actuación de un médico, hay que tomar en cuenta que a éste lo acompaña una presunción al efecto de haber ejercido un grado razonable de cuidado, y haber ofrecido un tratamiento adecuado. Para rebatir esa presunción, la parte demandante no puede descansar en una mera posibilidad de que el daño se debió al incumplimiento por parte del médico de su obligación profesional. *Ramos Robles v. García Vicario, supra*, página 976; *Rodríguez Crespo v. Hernández, supra*, página 650. Resulta forzoso establecer mediante preponderancia de prueba que la alegada conducta negligente del médico fue el factor que con mayor probabilidad causó el daño. *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267, 322 (1998); *Pagán Rivera v. Municipio de Vega Alta,* 127 D.P.R. 538, 543 (1990); *Cruz v. Centro Médico de Puerto Rico,* 113 D.P.R. 719, 744 (1983); *Zambrana v. Hospital Asilo de Damas*, 109 D.P.R. 517, 521-522 (1980).

De la misma manera, para que se establezca *prima facie* un caso de daños y perjuicios por alegada mala práctica en la medicina, es necesario que el demandante presente prueba satisfactoria sobre: 1) las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas, y 2) la relación causal entre la actuación u omisión del facultativo y la lesión sufrida por el paciente. *Valle Izquierdo v. E.L.A.,* ___ D.P.R. ___ (2002), **2002 J.T.S. 70**, página 1139; *Pagán Rivera v. Municipio de Vega Alta, supra*, página 544; *Medina Santiago v. Vélez*, 120 D.P.R. 380, 385 (1988).

Por ultimo, en vista de que las determinaciones sobre impericia médica del tribunal de instancia están fundamentadas en la prueba pericial y documental ofrecida, los tribunales apelativos están en igual posición para evaluarla y llegar a sus propias conclusiones. *Ríos Ruiz v. Mark, supra*, página 822.

## III

Por su parte, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece, en lo que nos concierne, que se podrá dictar sentencia sumaria:

*"[si] las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sean separables de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."*

El Tribunal Supremo ha interpretado que la sentencia sumaria es un mecanismo procesal extraordinario que permite aligerar la tramitación de pleitos permitiendo que se resuelvan los casos sin tener que celebrar un juicio en sus méritos. *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey,* 155 D.P.R. ___ (2002), **2002 J.T.S. 4,** página 583; *Mngt. Adm. Servs. Corp. v. E.L.A.,* 152 D.P.R. ___ (2000), **2000 J.T.S. 189**, página 440; *Partido Acción Civil v. E.L.A.,* 150 D.P.R. ___ (2000), **2000 J.T.S. 33**, página 681; *Fernández & Gutierrez, Inc. v. Municipio de San Juan,* 147 D.P.R. ___ (1999), **99 J.T.S. 31**, página 726; *Piñero v. A.A.A.,* 146 D.P.R. 890, 904 (1998). Utilizada sabiamente, contribuye a descongestionar los calendarios judiciales. *Pilot Life Insurance Co., v. Crespo Martínez,* 136 D.P.R. 624, 632 (1994).

La sentencia sumaria sólo deberá dictarse cuando el promovente haya establecido su derecho con claridad y haya quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada en la moción. *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey, supra,* página 583; *Jusino v. Walgreens,* 155 D.P.R. ___ (2001), **2001 J.T.S. 154**, página 374; *Pérez Rosado v. El Vocero de Puerto Rico,* 149 D.P.R. ___ (1999), **99 J.T.S. 160**, página 266.

Es norma reiterada que para derrotar la solicitud de sentencia sumaria, la parte contraria no podrá descansar meramente en las alegaciones incluidas en sus escritos, sino que deberá, como regla general, presentar contradeclaraciones juradas y documentos que demuestren la existencia de una genuina controversia sobre hechos materiales y sustanciales. *Jusino v. Walgreens, supra,* página 373; *Luán Invest. vs. Rexach Const.Co.,* 152 D.P.R. ___ (2000), **2000 J.T.S. 196**, página 553; *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 D.P.R. 563, 576 (1997); *PFZ Properties, Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881, 912-913 (1994); *Pilot Life Insurance v. Crespo Martínez, supra,* página 632. Si la parte opositora se cruza de brazos, se corre, pues, el riesgo de que se dicte sentencia en su contra. *Corp. Presiding Bishops CJS of LDS v. Purcell,* 117 D.P.R. 714, 721 (1986).

Ahora bien, es norma en esta jurisdicción la que señala como poco aconsejable utilizar este mecanismo procesal cuando por la naturaleza de la controversia se hace difícil obtener la verdad de todos los hechos pertinentes a través de declaraciones juradas o deposiciones, como por ejemplo, en casos que envuelven elementos subjetivos de intención, propósitos mentales, negligencia o credibilidad. *Jusino v. Walgreens, supra,* página 374; *Soto v. Hotel Caribe Hilton,* 137 D.P.R 294, 301 (1994); *J.A.D.M v. Centro Com. Plaza Carolina,* 132 D.P.R. 785, 803 (1993); *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272, 279 (1990).

## IV

Veamos las circunstancias que precedieron a la intervención quirúrgica del menor. El 14 de mayo de 1994, en el Dispensario Municipal Valentín Tricoche, el Dr. Vidal Febles examinó por primera vez al menor y llegó a la conclusión de que éste sufría de una condición llamada orquitis o torsión testicular. El doctor refirió de inmediato al paciente al Hospital de Distrito de Ponce. Los peticionarios arribaron al Hospital de Distrito de Ponce donde el menor recibió un diagnóstico de inflamación testicular y horas más tarde, fue dado de alta. El 16 de mayo de 1994, el menor regresó al Hospital de Distrito de Ponce debido a que su condición no mejoró. Esta

vez fue atendido por el Dr. Manuel F. Alsina Capó, urólogo, quien también diagnosticó una inflamación testicular. Sin embargo, debido a que el menor no resistía el dolor, el 19 de mayo de 1994, los peticionarios acudieron nuevamente a la Sala de Emergencias del Hospital de Distrito de Ponce. En esa ocasión, el menor fue atendido por el Dr. Santiago Correa, urólogo, quien el 20 de mayo de 1994, realizó una exploratoria testicular y extirpó el testículo izquierdo.

Ante la ya descrita intervención de los doctores del Hospital de Distrito de Ponce, el perito de la parte recurrida, el doctor José R. Guzmán Virella, expresó en su informe lo siguiente:

*"Inexplicablemente, aún en vista de los signos y síntomas clínicos del paciente, y aun teniendo en cuenta el referido del Dr. Vidal requiriendo una evaluación para descartar el diagnóstico de una torsión testicular, los médicos que evaluaron al paciente en el Hospital Regional de Ponce el 14 de mayo fallaron en considerar la posibilidad de torsión testicular y confiaron solamente en su juicio clínico para impropiamente adelantar un diagnóstico de orchioepididymitis, un diagnostico que no se ajusta a la fijación inmediata de los síntomas, un historial negativo de dysuria y un análisis de orina negativo. Los médicos también fallaron en requerir estudios adicionales diagnóstico tal como un sonograma de emergencia del flujo de color testicular o un scan testicular para corroborar el diagnóstico original y descartar una torsión. Si esas pruebas no estaban disponibles en ese momento en el Hospital Regional, entonces una consulta de urología inmediata se debió haber requerido. No hay anotación en el registro médico revisado que se efectuó intento alguno para obtener la consulta urológica de emergencia. Al fallar de siquiera considerar la posibilidad de una torsión testicular, los médicos en el Hospital Regional no proveyeron el tratamiento quirúrgico propio o adecuado que requería el paciente y permitieron la eventual infracción ischemica del testículo izquierdo. Este hecho, que es claro y no está en controversia conforme al registro médico revisado, representa una crasa desviación de los estándares de cuidado publicados."* ■

Específicamente, en cuanto al Dr. Alsina Capó, el perito de la parte recurrida expresó:

*"Para el momento en que el paciente fue evaluado por el Dr. Alsina Capó, su testículo estaba dañado irreparablemente con, por lo menos, cuarenta y ocho horas (48) de necrosis ischémica. Aun si el Dr. Alsina Capó hubiese iniciado una cirugía de emergencia, el eventual resultado clínico hubiese sido el mismo, con la remoción testicular como única opción. Si el daño alegado por el demandante se refiere a la pérdida de su testículo, y si la tardanza en un pronto diagnóstico y manejo de la condición fue la causa próxima, entonces el manejo ofrecido por el Dr. Alsina Capó no tiene relación con los daños alegados. A lo sumo, el manejo ofrecido por el Dr. Alsina Capó aumentó o extendió el dolor y la incomodidad del paciente, pero no llevó a la pérdida del testículo del demandante. El paciente perdió su testículo debido a la evaluación impropia y la administración o manejo de una torsión testicular aguda en el Hospital Regional de Ponce en las pocas horas preciosas disponibles para una cirugía de emergencia durante la madrugada del 14 de mayo de 1994."* ■

Al analizar el informe pericial que acompaña la moción de sentencia sumaria presentada por los peticionarios y los documentos que obran en autos, resulta evidente que existe una controversia real y sustancial sobre la cuestión principal planteada: la responsabilidad de la parte recurrida con relación a los daños sufridos por el menor John Luis Rivera Rivera. De acuerdo a la opinión vertida por el Dr. José R. Guzmán Virella, el diagnóstico de inflamación testicular realizado por los doctores del Hospital de Distrito de Ponce no fue certero. El Dr. Guzmán Virella expresó que ese no era el manejo que la buena práctica médica sugiere.

Sin embargo, en igual medida, surge del expediente que el sonograma testicular que se le realizó al menor mostró signos no específicos de una inflamación del testículo izquierdo. De este modo, existe controversia en cuanto a si el cuadro clínico presentado debía llevar al diagnóstico de torsión testicular o al de una inflamación testicular. Los peticionarios no lograron establecer en su solicitud de sentencia sumaria que las normas de cuidado médico exigieran, en las circunstancias particulares de este caso, un diagnóstico exclusivo e inequívoco

de torsión testicular.

Así, pues, en el caso que nos ocupa existe una controversia real y sustancial de hechos que le impedían al Tribunal de Primera Instancia resolver sumariamente el aspecto de la negligencia. El mencionado informe pericial del Dr. Guzmán Virella no estableció que los doctores del Hospital de Distrito de Ponce, el Dr. Alsina Capó inclusive, hayan incumplido con las normas del campo de la medicina y que ello haya sido la causa próxima para un diagnóstico y tratamiento alegadamente inadecuados suministrados al menor. El contenido de dicho informe pericial no elimina la controversia sobre los hechos y la actuación de la parte recurrida en la atención médica brindada al menor John Luis Rivera Rivera. Por tanto, existiendo una controversia real y sustancial, procedía declarar sin lugar la solicitud de sentencia sumaria presentada por los peticionarios.

A la luz de los hechos que tuvo ante sí el Tribunal de Primera Instancia contenidos en los documentos que las partes presentaron, así como las alegaciones de éstas, no encontramos que dicho foro abusara de su discreción al denegar la solicitud de sentencia sumaria. Existen hechos que deben dilucidarse en un juicio plenario previo a una determinación de negligencia. Entre otros, debe dilucidarse el trámite e interrelaciones que se siguió por el Hospital de Distrito de Ponce para que el menor recibiese el tratamiento que se recomendó.

**V**

Por los fundamentos expuestos anteriormente, denegamos la expedición del auto solicitado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 144**

**1.** Resolución del 4 de septiembre de 1996, página 14 del apéndice del recurso.

**2.** Traducción suplida por los peticionarios en su Petición de *Certiorari*, página 10.

**3.** Traducción suplida por los peticionarios en su Petición de *Certiorari*, página 11.