*735 TEXTO COMPLETO DE LA SENTENCIA
La apelante, Asociación de Residentes de Villa Caparra Norte, Inc. (la Asociación), solicita que revoquemos la sentencia emitida el 16 de agosto de 2001 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la misma, el Tribunal de Primera Instancia dictó sentencia sumaria en la que desestimó la *736 demanda presentada por la Asociación. Concluyó que la servidumbre o condición restrictiva sobre edificación y uso que grava la propiedad del demandado-apelado Ledo. Rafael Toro Ramírez carece de fuerza y eficacia. Se basó en los cambios ocurridos en el área circundante y en la renuncia o abandono de los propietarios que reciben los beneficios de la servidumbre, al permitir un uso incompatible con la restricción impuesta.
Por los fundamentos que expondremos, revocamos la sentencia apelada.
I
La propiedad que nos ocupa es el solar identificado con el número M-220, finca número 1474, inscrita al folio 145 del tomo 25 de Guaynabo. Consiste de un solar con cabida de 1,102.50 metros cuadrados, sita en el Barrio Pueblo Viejo de Guaynabo, que colinda por el sur con la carretera número 2 que conduce a Bayamón, por el oeste con terrenos pertenecientes al Pueblo de Puerto Rico y por sus lindes restantes con terrenos pertenecientes a personas privadas. La misma resulta de la segregación de una finca de mayor cabida identificada con el número registral 920, según consta de la Escritura Número 89 otorgada el 21 de noviembre de 1938 ante el notario Sergio G. Gelpí, debidamente inscrita en el Registro de la Propiedad. Desde junio de 1996, el dueño de la finca número 1474 es el demandado-apelado Ledo. Rafael Toro Ramírez (Ledo. Toro), quien ubicó allí una oficina de abogados bajo la.razón social Toro & Arsuaga.
El 18 de mayo de 1998, la Asociación presentó demanda sobre acción civil solicitando se paralizaran las operaciones de la oficina profesional del Ledo. Toro, alegando que el solar está sujeto a limitaciones de servidumbre en equidad que surgen de la Escritura Número 63 otorgada el 14 de diciembre de 1939 ante el notario Enrique Córdova Díaz, sobre Imposición de Restricciones para Urbanización, inscritas sobre la finca matriz número 920, al folio 157 vuelto del tomo 17 de Guaynabo, inscripción primera.
El Ledo. Toro negó las alegaciones contenidas en la demanda y presentó reconvención alegando que las restricciones contenidas en la Escritura Número 63 no eran aplicables a su propiedad, debido a que las mismas habían sido impuestas con posterioridad a la segregación que dio vida a su finca. No obstante, reconoció que en virtud de la escritura de segregación y compraventa (Escritura Número 89), la referida finca había quedado sujeta a las siguientes cláusulas restrictivas:

"QUINTO:- En la parcela descrita y vendida mediante este documento, solamente se podrá construir una casa-residencia de una sola vivienda de CONCRETO de un precio no menor de DOS MIL DOLARES ($2,000.00), y dicha casa deberá ser construida a una distancia no menor de quince pies de la calle en que de su frente.

SEXTO:- Las anteriores restricciones se inscribirán en el Registro de la Propiedad para gravar el inmueble vendido y obligará a los compradores, sus herederos o cesionarios, y el cumplimiento de dichas restricciones podrá ser exigido por los vendedores o por cualquier otra persona, personas o entidades que adquieran parte alguna de la finca principal anteriormente descrita." 
El Ledo. Toro solicitó que se cancelaran, modificaran o alteraran las restricciones contenidas en las cláusulas quinta y sexta de la mencionada Escritura Número 89 debido a que, entre otras razones, habían ocurrido cambios en el vecindario que hacían inapropiado el uso residencial y los propietarios que reciben los beneficios de la servidumbre habían permitido, por más de treinta años, un uso incompatible con la restricción impuesta. Específicamente indicó que desde que el Congreso Central de Trabajadores y Oficinistas de Puerto Rico fue propietario de la finca en el año 1968 y, posteriormente, según fue cambiando de dueño, ésta había sido utilizada para varios fines comerciales, tales como oficinas y un laboratorio químico-analítico. Alegó, además, que como el solar estaba ubicado en un distrito residencial bajo zonificación R-5, se permitía vía excepción, el uso del mismo para el establecimiento de oficinas profesionales. 
*737 Así las cosas, la Asociación presentó moción de sentencia sumaria alegando que a pesar de que la finca no estaba cubierta por las limitaciones de servidumbre en equidad que surgen de la Escritura Número 63 sobre Imposición de Restricciones para Urbanización, la limitación de construcción impuesta por la Escritura Número 89 constituia una servidumbre predial que había sido declarada válida por este Foro en el caso Asociación de Propietarios de Villa Caparra Norte, Inc. v. Angel Luis Díaz Canales, KLAN-96-00971. Toda vez que el Ledo. Toro había admitido la existencia de la limitación de construcción contenida en las cláusulas quinta y sexta de la Escritura Número 89, la Asociación solicitó que se declarara con lugar la demanda.
Por su parte, el Ledo. Toro presentó solicitud para que se dictara sentencia sumaria, pero a su favor. Alegó que la limitación de uso residencial impuesta mediante la Escritura Número 89 constituye una servidumbre en equidad que quedó extinguida por el abandono o renuncia de los propietarios que reciben los beneficios de la servidumbre, al éstos permitir, durante más de treinta años, el establecimiento de varias oficinas comerciales. Señaló que la limitación de uso resultaba irrazonable y opresiva, debido a los cambios en el área circundante y a que la finca en cuestión no se beneficia del acceso controlado de la urbanización debido a que su único acceso es por la carretera número 2. Argumentó, además, que las limitaciones contenidas en las cláusulas quinta y sexta anteriormente transcritas van más bien dirigidas al material en que debe ser construida la estructura de que se trate, y no al uso que se le dará a la misma, por eso la utilización de mayúsculas al mencionar la especificación "CONCRETO".
El juez de Primera Instancia celebró una vista ocular cuyos pormenores fueron recogidos en el acta fechada 15 de mayo de 2001. El 16 de agosto de 2001, el Tribunal de Instancia emitió sentencia sumaria a favor del Ledo. Toro y desestimó la demanda presentada por la Asociación, al concluir que la servidumbre o condición restrictiva sobre edificación y uso que grava la propiedad carece de fuerza y eficacia, debido a los cambios ocurridos en el área circundante y a su renuncia o abandono por los propietarios que reciben los beneficios de la servidumbre, al haber permitido usos incompatibles con la restricción impuesta.
No conforme con dicha determinación, la Asociación compareció oportunamente ante nos y solicitó que revocáramos la sentencia emitida, señalando los siguientes errores:

‘‘Erró el Tribunal de Primera Instancia al declarar con lugar una Solicitud de Sentencia Sumaria basada en una causa de acción renunciada expresamente por el demandado.

Erró el Tribunal de Primera Instancia al actuar de una forma en que carece de jurisdicción por falta de parte indispensable.

Erró el Tribunal de Primera Instancia al utilizar el mecanismo de Sentencia Sumaria frente a la controversia de hechos de cambios en el vecindario y contradecir decisiones específicas del Tribunal Supremo y del Tribunal de Circuito en 1988 y 1998 sin que se pasara prueba de cambios posteriores a esa fecha. Además, erró al aplicar la doctrina de servidumbres. ”

Con el beneficio de los alegatos de todas las partes, pasamos a resolver.
II
Las citadas cláusulas quinta y sexta de la Escritura 89 antes identificada, establecen restricciones de uso y de construcción que una vez inscritas en el Registro de la Propiedad, gravan expresamente la propiedad y obligan a su dueño, herederos y cesionarios y establece quién puede reclamar el derecho. Por tanto, coincidimos con la posición de las partes en cuanto a que las mismas constituyen una servidumbre en equidad.
Las servidumbres en equidad son cláusulas restrictivas a beneficio de presentes y futuros adquirentes que limitan las facultades de éstos con respecto al uso y las edificaciones permisibles en la propiedad sujeta a las *738 mismas. Son cargas o gravámenes reales que, una vez inscritas en el Registro de la Propiedad, constituyen derechos reales oponibles erga omnes. Asoc. Pro Bienestar Vecinos Urbanización Juan B. Huyke, Inc. v. Banco Santander de Puerto Rico,_D.P.R._(2002), 2002 J.T.S. 104, página 1461; Rodríguez v. Gómez, 156 D.P.R._(2002), 2002 J.T.S. 34, página 801. Su validez depende de que las limitaciones sean razonables, se establezcan como parte de un plan general de mejoras, consten de forma específica en el título y se inscriban en el Registro de la Propiedad. Asoc. Pro Bienestar Vecinos Urbanización Juan B. Huyke, Inc. v. Banco Santander de Puerto Rico, supra, página 1461.
Ahora bien, las restricciones que constituyen servidumbres en equidad pueden modificarse o extinguirse en los siguientes casos: (1) por convenio de los interesados; (2) por efecto del tiempo o por realizarse la condición si las restricciones así se han constituido; (3) por confusión; (4) por renuncia o abandono de los propietarios que reciben los beneficios de la servidumbre; (5) por expropiación forzosa; (6) cuando cambios radicales del vecindario no sólo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta, en verdad, imposible alcanzar los fines que perseguía la servidumbre. Id., página 1462.
Para la extinción de una servidumbre en equidad por cambios radicales en el vecindario, se exige que el cambio: (1) haya convertido la restricción en una carga irrazonable y opresiva para el dueño del predio sirviente, (2) haya destruido el valor que de otro modo tendría la restricción para los dueños de los predios dominantes, y (3) frustre por completo y permanentemente el propósito u objetivo de la restricción. Es preciso que se satisfagan los tres requisitos para que se reconozca la extinción. Id., página 1464. Los cambios en el vecindario tienen que ser de carácter tan radical y permanente, que lleguen al punto de impedir sustancialmente la consecución de las ventajas y de los beneficios establecidos por la servidumbre. Lo decisivo es si por razón de cambios radicales en las condiciones del vecindario, resulta imposible lograr el propósito que persigue la servidumbre en equidad. Es entonces cuando ésta queda modificada o extinguida. El peso de la prueba para establecer que ha ocurrido un cambio en el vecindario le corresponde al que ataca la validez de la servidumbre en equidad. Id., páginas 1464-5.
Al determinarse si se ha extinguido una servidumbre en equidad por cambios radicales en el vecindario, pueden considerarse tanto los cambios acaecidos dentro del área restringida como las alteraciones sobrevenidas en los terrenos que la rodean. No basta con que una parte del área restringida, situada al borde o a orillas del distrito que no está sujeto a las restricciones, sufra el impacto de los referidos cambios, si hay solares o porciones interiores del área restringida que todavía pueden recibir las ventajas y beneficios establecidos a su favor mediante la servidumbre equitativa. Es decir, las restricciones no pueden extinguirse mediante un proceso gradual de abrogación que empieza con los solares al borde del área restringida y se extiende paso a paso hasta las porciones o solares situados en el centro de los terrenos restringidos. Id., página 1465. El hecho de que haya ocurrido un desarrollo comercial en el área periférica al área restringida por la servidumbre, no implica que se hayan abandonado las restricciones al uso de la propiedad que gravan el vecindario. Id., página 1467.
Con el propósito de determinar si una servidumbre en equidad ha quedado modificada o extinguida por cambios en el vecindario, los tribunales deben tomar en consideración factores tales como: (1) el tamaño del área sujeta a las restricciones; (2) la localización de los cambios ocurridos con respecto al área restringida; (3) el tipo de cambio ocurrido; (4) cambios en la infraestructura; (5) la extensión y naturaleza de los usos comerciales e industriales en las áreas circundantes; (6) valor de los terrenos residenciales en comparación con los comerciales; (7) término y duración de las restricciones; (8) si las restricciones continúan siendo beneficiosas o no para los dueños de los solares afectados; y (9) el cambio ocurrido en la zonificación del área y sus alrededores. Id., página 1465. La mera concesión de un permiso por la Junta de Planificación o por la Administración de Reglamentos y Permisos no tiene el efecto ni el alcance de anular restricciones que resulten inconsistentes con el permiso concedido. Id., página 1469.
*739 III
Por su parte, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece, en lo que nos concierne, que se podrá dictar sentencia sumaria:

"[si] las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sean separables de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."

El Tribunal Supremo ha interpretado que la sentencia sumaria es un mecanismo procesal extraordinario que permite aligerar la tramitación de pleitos permitiendo que se resuelvan los casos sin tener que celebrar un juicio en sus méritos. Asoc. Pese. Pta. Figueras v. Pto. Del Rey, 155 D.P.R._(2002), 2002 J.T.S. 4, página 583; Mngt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R._(2000), 2000 J.T.S. 189, página 440; Partido Acción Civil v. E.L.A., 150 D.P.R._(2000), 2000 J.T.S. 33, página 681; Fernández & Gutiérrez, Inc. v. Municipio de San Juan, 147 D.P.R. _ (1999), 99 J.T.S. 31, página 726; Piñero v. A.A.A., 146 D.P.R. 890, 904 (1998). Utilizada sabiamente, contribuye a descongestionar los calendarios judiciales. Pilot Life Insurance Co., v. Crespo Martínez, 136 D.P.R. 624, 632 (1994).
La sentencia sumaria sólo deberá dictarse cuando el promovente haya establecido su derecho con claridad y haya quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada en la moción. Asoc. Pesc. Pta. Figueras v. Pto. Del Rey, supra, página 583; Jusino v. Walgreens, 155 D.P.R._(2001), 2001 J.T.S. 154, página 374; Pérez Rosado v. El Vocero de Puerto Rico, 149 D.P.R._(1999), 99 J.T.S. 160, página 266.
Es norma reiterada que para derrotar la solicitud de sentencia sumaria, la parte contraria no podrá descansar meramente en las alegaciones incluidas en sus escritos, sino que deberá como regla general, presentar contradeclaraciones juradas y documentos que demuestren la existencia de una genuina controversia sobre hechos materiales y sustanciales. Jusino v. Walgreens, supra, página 373; Luán Invest. v. Rexach Const.Co., 152 D.P.R._(2000), 2000 J.T.S. 196, página 553; Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563, 576 (1997); PFZ Properties, Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 912-913 (1994); Pilot Life Insurance v. Crespo Martínez, supra, página 632. Si la parte opositora se cruza de brazos, se corre, pues, el riesgo de que se dicte sentencia en su contra. Corp. Presiding Bishops CJS of LDS v. Purcell, 117 D.P.R. 714, 721 (1986).
Ahora bien, es norma en esta jurisdicción la que señala como poco aconsejable utilizar este mecanismo procesal cuando por la naturaleza de la controversia se hace difícil obtener la verdad de todos los hechos pertinentes a través de declaraciones juradas o deposiciones, como por ejemplo, en casos que envuelven elementos subjetivos de intención, propósitos mentales, negligencia o credibilidad. Jusino v. Walgreens, supra, página 374; Soto v. Hotel Caribe Hilton, 137 D.P.R 294, 301 (1994); J.A.D.M v. Centro Com. Plaza Carolina, 132 D.P.R. 785, 803 (1993); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990).
IV
Comenzaremos por discutir el tercer señalamiento de error. La Asociación señala que el Tribunal de Instancia erró al resolver el pleito sumariamente toda vez que existía controversia de hechos en cuanto a los alegados cambios ocurridos en el vecindario, y al aplicar la doctrina de servidumbres.
En la sentencia apelada, el Tribunal de Primera Instancia determinó que la servidumbre o condición restrictiva sobre edificación y uso que afecta la propiedad del Ledo. Toro carece de fuerza y eficacia, debido a los cambios ocurridos en el área circundante y por la renuncia o abandono de los propietarios que reciben los *740 beneficios de dicha servidumbre, al permitir un uso incompatible con la restricción impuesta. En apoyo a su decisión, el Tribunal dio valor al argumento del Ledo. Toro a los efectos de que anteriormente la propiedad, y durante un periodo de treinta años, había sido utilizada para fines comerciales, sin que la Asociación hubiera presentado objeción a dicho uso no residencial. A lo anterior, el Tribunal añadió lo observado durante la vista ocular. El acta que recoge dichas observaciones indica que la propiedad está ubicada a orillas de la carretera número 2 que conduce a Bayamón y que al lado opuesto de dicha carretera ubica una iglesia católica y el Colegio San José. Observando de frente la finca en controversia, colinda por su izquierda con una estructura perteneciente al "Opus Dei" en la cual residen unas monjas y se celebran seminarios católicos y, en esa misma dirección y contigua a dicha estructura, existe otra residencia dedicada a los mismos fines, y el museo conocido como las Ruinas de Ponce de León en Caparra. Por su lado derecho, la propiedad colinda con un terreno vacío (desocupado) que anteriormente tenía unas estructuras de cemento dedicadas a oficinas, que fueron demolidas. La propiedad tiene un único acceso por la carretera número 2, quedando excluida del beneficio del control de acceso de la urbanización, con el cual colinda por su parte trasera. Por último, a una distancia próxima ("walk distance") se encuentran unos condominios dedicados a fines residenciales y comerciales.
Sin embargo, examinada la prueba documental, entendemos que no existe base en el récord que sostenga la determinación del Tribunal de Primera Instancia de que los cambios habidos en el vecindario justifican la eliminación de las restricciones que pesan sobre el solar en cuestión. El hecho de que el área esté zonificada como distrito R-5, que significa que ésta cuenta con una alta densidad poblacional y que se establece "para clasificar áreas urbanas de carácter residencial próximas a centros principales de actividad comercial, propensas al redesarrollo en alta densidad poblacional", no impide que los vecinos quieran mantener el carácter residencial que motivó las impugnadas restricciones.
En la sentencia recurrida, así como en el acta de la vista ocular y demás prueba documental, no se precisan los alegados cambios radicales en el vecindario que justifiquen concluir que las restricciones que afectan al solar del Ledo. Toro deben ser eliminadas por ser injustas, irrazonables y opresivas.
De la prueba documental no surgen hechos que demuestren hasta qué punto los cambios ocurridos en el área cumplen con los requisitos anteriormente reseñados para declarar modificada o extinguida una servidumbre en equidad. A pesar de que en el acta de la vista ocular se menciona que en los terrenos contiguos a la finca en controversia existen estructuras dedicadas a fines comerciales, resulta necesario determinar si dichos terrenos están sometidos a alguna restricción equivalente a la de la finca que nos ocupa. Además, hay que dilucidar si quedan solares o porciones interiores del área restringida que todavía puedan recibir las ventajas y beneficios objeto de la restricción. También se requiere hacer un análisis a los efectos de detectar la presencia de los demás requisitos que provocarían la extinción o modificación de la servidumbre en controversia. Nótese que el hecho de que la propiedad haya sido utilizada por más de treinta años para fines no residenciales, asunto sobre el cual no estamos pasando juicio, no es suficiente para establecer la existencia de cambios radicales en el vecindario. Tampoco el que del otro lado y en la periferia de la carretera número 2 se ubiquen terrenos dedicados a usos no residenciales y que la finca en controversia no se beneficie de un acceso controlado. Para que se pueda decretar la extinción de la restricción, es preciso que se demuestre que el cambio ha convertido la restricción en una carga irrazonable, que haya destruido el valor que de otro modo tendría la restricción y que haya frustrado por completo y permanentemente el propósito u objetivo de la restricción. La sentencia apelada carece de tales fundamentos.
Conforme las normas anteriormente esbozadas, el Ledo. Toro tiene el peso de demostrar que han ocurrido los cambios sustanciales que alega. La vista ocular celebrada no altera el requisito de peso de prueba para quien ataca la validez de la servidumbre. Esta constituye meramente una representación gráfica de la situación existente en el área. Los documentos de solicitud de sentencia sumaria solamente muestran los usos a los cuales se ha destinado la propiedad. Independientemente de que los usos hayan sido incompatibles o no con la *741 restricción que nos ocupa, el Ledo. Toro tiene la obligación de demostrar hasta qué punto tales usos han dejado sin valor la misma. En fin, en atención a la naturaleza de la controversia suscitada, se hace poco aconsejable la utilización del mecanismo sumario en las circunstancias de este caso. Existen controversias que tienen que verse en los méritos. Se cometió el error señalado.
V
En su primer y segundo señalamientos de error, la Asociación alega que el Tribunal de Primera Instancia resolvió conforme lo solicitado en una causa de acción renunciada por el Ledo. Toro —refiriéndose a la reconvención — , actuando sin jurisdicción, por cuanto la misma no fue notificada a todos los titulares que eran partes indispensables en ¿1 pleito.
En cuanto a estos errores, basta con aclarar que a pesar de que el Ledo. Toro desistió sin perjuicio de su reconvención, la Asociación solicitó el remedio sumario fundamentada en las alegaciones que en un principio formaron parte de la reconvención del Ledo. Toro; esto es, en el reconocimiento por parte de éste sobre la existencia de las restricciones contenidas en las cláusulas quinta y sexta de la Escritura Número 89, debidamente inscrita en el Registro de la Propiedad. En su reconvención, el Ledo. Toro había aceptado la existencia de las restricciones, más había solicitado la modificación o extinción de las mismas por ser irrazonables al ejercicio de su derecho propietario. Ciertamente, el reconocimiento del Ledo. Toro beneficiaba a la Asociación en cuanto afirmaba la existencia de unas limitaciones inscritas que prohibían el uso no residencial. Es por ello que la Asociación solicita que se dicte sentencia que reafirmara la existencia de tales restricciones. El Ledo. Toro aceptó que había reconocido las mismas, mas, sin embargo, solicitó el remedio a su favor señalando que dichas restricciones resultaban irrazonables y opresivas. Es decir, aunque el Ledo. Toro desistió de su reconvención, la Asociación utilizó el reconocimiento que aquél hizo en su reconvención, por lo que resultaba lógico que éste presentara su oposición fundamentado en la irrazonabilidad de las mismas, alegaciones que también estaban contenidas en su reconvención. El tribunal resolvió conforme a las alegaciones de la demanda y las mociones de sentencia sumaria y no conforme a lo solicitado en la reconvención desistida. No se cometieron los errores señalados.
VI
Por los fundamentos que anteceden, revocamos la sentencia apelada y ordenamos la continuación de los procedimientos conforme a lo aquí resuelto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 18
1. Esta descripción surge de la Certificación Registral Núm. 437 expedida el 6 de febrero de 1997, páginas 32-33 del apéndice del Escrito de Apelación.
2. Estas condiciones surgen del escrito intitulado "Contestación a Demanda, Defensas Afirmativas y Reconvención", página 5 del apéndice del Escrito de Apelación.
3. Surge de la minuta de la conferencia sobre el estado de los procedimientos transcrita el 15 de noviembre de 1999, que el Ledo. Toro desistió sin perjuicio de su reconvención, reservándose expresamente el derecho a levantar defensas afirmativas, entre ellas las defensas de laches (incuria) y prescripción. Véase Minuta, páginas 26-27 del apéndice del Escrito de Apelación.
4. También alegó que habían ocurrido violaciones en cuanto a la limitación de construcción.
*742 5. Ver páginas 83 a 86 del apéndice del Escrito de Apelación.
6. El Ledo. Toro presentó una declaración jurada de la entonces presidenta de la Federación de Trabajadores, Sra. Luisa I. Acevedo Zambrana, de la cual surge que la propiedad se dedicó a oficinas desde que dicho gremio obrero adquirió la misma el 29 de noviembre de 1968.
7. Debe referirse al "Opus Dei".
8. También se establece para clasificar "áreas t ¿scep tibies al redesarrollo o desarrollo en alta densidad poblacional por la naturaleza del sector, accesos viales, existencias de facilidades públicas, tales como escuelas elementales, intermedias, superiores, parques y por la capacidad de los servicios de alcantarillado, agua, energía eléctrica y facilidades de transportación." Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4, 5 de noviembre de 2000, sección 15.00.