*941 TEXTO COMPLETO DE LA SENTENCIA
En el recurso de certiorari de epígrafe, los peticionarios, miembros de la sucesión de la Sra. Naife Issa Saleh, nos solicitan la revocación de una orden dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 3 de junio de 2002 y notificada el 19 de junio de 2002. Mediante dicha orden, el TPI reafirmó su negativa a permitir que los peticionarios hicieran descubrimiento de prueba para preparar su oposición a la moción de sentencia sumaria de los demandados-recurridos.
Estudiados cuidadosamente los autos y los documentos del Apéndice, el escrito de oposición de los recurridos, su Apéndice y el derecho aplicable, resolvemos expedir el auto de certiorari solicitado y revocar la orden recurrida.
I
El 19 de enero de 1999, los miembros de la sucesión de Naife Issa Saleh presentaron una demanda por incumplimiento de contrato y daños y perjuicios contra PMC Marketing Corporation, empresa dueña de la cadena de farmacias “El Amal”. Luego de varias enmiendas a las alegaciones, éstos presentaron una demanda enmendada fechada el 7 de mayo de 2001, siendo ésta la última.
En esencia, los peticionarios alegaron que para el 1980, los co-demandados Sr. Saleh Yassin (Sr. Yassin) y la Sra. Aida Saleh de Yassin le hicieron una propuesta a Naife Issa Saleh, hermana de Aida y cuñada de Saleh Yassin, para constituir una sociedad. Adujeron que las partes hicieron un contrato verbal para comprar acciones y/ o una corporación dedicada al negocio de farmacia conocida como “La Receta”, la cual sería para el beneficio exclusivo de Naife Issa Saleh. Los demandantes además señalaron que el haber social y/o corporativo, después del contrato verbal, eran dos farmacias: El Amal localizada en el Berwind Shopping Center del Barrio Sabana Llana de Río Piedras, y “La Receta”, ahora llamada El Amal #3, sita en el Iturregui Shopping Center. Esta última, se afirma, advino a ser propiedad de Naife Issa Saleh.
Por otro lado, los demandantes expusieron que una vez consumado el mencionado acuerdo, la Sra. Naife Issa Saleh trabajó ininterrumpidamente por espacio de 15 años hasta que se enfermó y fue sustituida por su hijo, el Sr. Issa Mohammed Mamóud. Precisaron que ésta se mantuvo trabajando sin disfrutar de vacaciones y sin que se le pagaran las mismas; que tampoco recibió pagos o dividendos de la sociedad o corporación; y que ésta había invertido la cantidad de $200,000.00 dólares en la compra de mercancía para El Amal #3.
Igualmente, los demandantes alegaron, por información y creencia, que el Sr. Yassin y/o “El Amal” hicieron una reorganización y/o fusión de varias corporaciones en la cual estaba incluida la participación y los activos propiedad de Naife Issa Saleh. Según esbozaron, fue bajo dicha reorganización que posteriormente se adquirieron las farmacias “Moscoso”, las cuales hoy día, se conocen como la cadena de farmacias “El Amal”. De otra parte, los peticionarios alegaron que al fallecimiento de Naife el 18 de agosto de 1996 en California, y como parte de sus activos, ésta dejó una participación en la corporación demandada (El Amal) “ ... equivalente a lo que represente al día de hoy el porciento proporcional al haber existente cuando se comenzó la sociedad y su respectivo incremento y/o en la alternativa al 50% de las acciones de las Farmacias El Amal Inc. y/o PMC Marketing Corp. d/b/a Farmacias El Amal”. 
De otra parte, los demandantes señalaron que en o alrededor del 20 de enero de 1998, el Sr. Yassin tomó por fuerza la farmacia, removiendo a Issa, hijo de la causante, de su puesto de empleado y como dueño de la farmacia, causándole daños y peijuicios.
A tenor con los hechos arriba expuestos, los peticionarios instaron reclamación contra los demandados por incumplimiento de contrato por alegadamente no reconocerles su participación como accionistas de las corporaciones demandadas, y daños y peijuicios como consecuencia de la privación de su propiedad y *942 participación corporativa. Entre otros, solicitaron resarcimiento por los daños provenientes de la interrupción de la vida diaria, pérdida económica, disminución de ingresos y pérdida de lucro. Además, incluyeron una reclamación monetaria de Issa por el despido de éste y la privación de cierta propiedad personal que alegadamente se encontraba en su oficina al momento de su despido, la cual piden le sea devuelta. 
El 7 de junio de 2001, los demandados contestaron la demanda enmendada negando los hechos medulares de la misma. Entre sus defensas afirmativas particularmente alegaron que la Sra. Naife Issa Saleh jamás aportó capital para la adquisición u operación de El Amal #3 y que se desempeñó en la misma únicamente como empleada.
El 14 de septiembre de 2001, los peticionarios cursaron a los demandados un Interrogatorio Preliminar. Previamente, el 1ro de marzo de 2001, habían notificado un Requerimiento de Documentos. Apéndice de los peticionarios, págs. 70-79.
Así las cosas, el 30 de enero de 2002, los demandados-recurridos presentaron una “Moción de Sentencia Sumaria”. Adujeron que la reclamación de los peticionarios por incumplimiento de contrato estaba prescrita por haber transcurrido más de 15 años desde que ésta tuvo su origen y que la causante nunca aportó capital ni participó en los asuntos que dieron lugar a la creación de la empresa “El Amal”. Argumentaron que en ningún momento la causante reclamó tener derecho alguno sobre la corporación, por ser una persona honesta que sabía que ese no era el caso. La referida moción de sentencia sumaria fue sustentada con las declaraciones juradas del Sr. Saleh Yassin y la Leda. Diana Azizi de Arbona, y una copia del contrato de compraventa de la Farmacia “La Receta”. Apéndice de los peticionarios, págs. 34-55, Anejo 2.
Por orden emitida el 13 de febrero de 2002, el TPI concedió, sua sponte, a los peticionarios un plazo de 20 días para oponerse a la moción de sentencia sumaria, cuya orden fue notificada el 22 de febrero de 2002; Apéndice de los peticionarios, pág. 56, Anejo 3. El 2 de marzo de 2002, antes de vencer el término concedido, éstos solicitaron una prórroga de treinta (30) días para contestar dicha moción.
Los peticionarios presentaron otra moción el 26 de marzo de 2002, en la que solicitaron al tribunal autorización para tomar las deposiciones de las personas que suscribían las mencionadas declaraciones juradas a los efectos de poder oponerse a la moción de sentencia sumaria. Apéndice de los peticionarios, pág. 59, Anejo 5.
Mediante las órdenes emitidas el 10 de abril de 2002 y notificadas el 3 de mayo de 2002, el TPI concedió a los peticionarios prórroga de quince (15) días para oponerse a la moción de sentencia sumaria, mas les denegó el descubrimiento de prueba solicitado. Los peticionarios entonces presentaron oportuna reconsideración, la que fue resuelta por orden de 3 de junio de 2002, notificada el 19 de julio de dicho mismo año. En la misma, el TPI se reafirmó en su denegatoria del descubrimiento de prueba solicitado al hacer referencia a su previa orden del 10 de abril de 2002. Apéndice de los peticionarios, pág. 80, Anejo 8.
El 18 de julio de 2002, los peticionarios instaron el recurso de epígrafe imputando que:

“Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan, cuando abusó de su discreción y no le ha permitido a la parte demandante hacer cierto descubrimiento de prueba -(tomar deposiciones a los declarantes de las declaraciones juradas que se incluyeron con la Moción Sentencia Sumaria)- al amparo de las Reglas 36.5 y 36.6 de las de Procedimiento Civil de 1979 para así poder presentar su oposición a la Moción de Sentencia Sumaria presentada por la parte demandada. ”

Por resolución de 28 de agosto de 2002, concedimos 15 días a la parte recurrida para que fijara su posición respecto al recurso. Luego de varias prórrogas al efecto, los recurridos presentaron su oposición el 11 de octubre de 2002. En esencia, sostienen que los demandantes-peticionarios tuvieron una oportunidad adecuada y suficiente *943 para llevar a cabo el descubrimiento de prueba, y que no se aprovecharon de la misma, exhibiendo una conducta de indolencia y dejadez en el trámite del caso.
Posteriormente, el 22 de octubre de 2002, los recurridos presentaron una moción solicitando la desestimación del recurso. Alegaron que los peticionarios habían violado el Reglamento del Tribunal de Circuito de Apelaciones al no acompañar en el Apéndice al recurso copia íntegra de la demanda enmendada de 7 de mayo de 2001.
Por su parte, los peticionarios se opusieron el 15 de noviembre de 2002 aceptando que, en efecto, no incluyeron copia completa de la aludida demanda enmendada en su Apéndice. No obstante, explicaron que el hecho de que se incluyera en el Apéndice solamente la primera página de ésta obedeció a que al reproducir los documentos en “City Stationary”, dicho lugar omitió las nueve páginas del referido escrito, porque no lo desgraparon para reproducirlo. Argumentaron que a la luz de Román Velázquez v. Román Hernández, Opinión Per Curiam de 24 de septiembre de 2002, 2002 J.T.S. 32, 157 D.P.R. _ (2002), la desestimación de su recurso constituye una sanción sumamente drástica y que la omisión del documento completo no impide que este tribunal resuelva el recurso adecuadamente. De igual forma, los peticionarios mencionaron haber unido copia íntegra de la demanda enmendada a su escrito de oposición y el hecho de que los recurridos la incluyeron en su propio Apéndice.
Teniendo el beneficio del análisis de las comparecencias de las partes, pasamos a atender como cuestión de umbral la solicitud de desestimación del recurso.
II
Es norma reiterada que los abogados están obligados a cumplir fielmente el trámite prescrito en nuestro Reglamento para el perfeccionamiento de los recursos. Arriaga v. FSE, 145 DPR 122, 130 (1998). El Reglamento de este tribunal requiere, como requisito jurisdiccional de todo recurso, la presentación de un Apéndice que contenga copias literales de los documentos esenciales para sustentar el recurso. Respecto a los certiorari, la Regla 34E(l)(a)(l) de nuestro Reglamento dispone en su parte pertinente que en casos civiles deberá incluirse una copia literal de “... la demanda principal, la de coparte o de tercero(a) y reconvención, con sus respectivas contestaciones; ...” También establece en su inciso (d) que se unirá "... toda moción o escrito de cualquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente cualquier asunto planteado en la solicitud de certiorari, que sea relevante a ésta”. 4 L.P.R.A. Ap. XXH-A, R. 34.
En Codesi v. Municipio de Canóvanas, Opinión de 24 de marzo de 2000, 2000 J.T.S. 61, 150 D.P.R._ (2000), el Tribunal Supremo resolvió que la omisión de incluir los anteriores documentos acarrea la desestimación del recurso.
No empece a lo anterior, recientemente en Andrés Román Velázquez v. Andrés Román Hernández, supra, el Tribunal Supremo resolvió que: ”[c]omo regla general, el mecanismo procesal de la desestimación como sanción debe utilizarse como último recurso. Por consiguiente, cuando el Tribunal [de Circuito de Apelaciones] utiliza dicho mecanismo procesal en casos de incumplimiento con su Reglamento, debe cerciorarse primero que el incumplimiento haya provocado un impedimento real y meritorio para que el Tribunal pueda atender el caso en los méritos. ”
Considerados los escritos de las partes, concluimos que la omisión de la totalidad de la demanda enmendada por parte de los peticionarios no constituye un impedimento real para que este foro atienda el recurso. Los peticionarios acreditan que su intención fue incluir en el Apéndice la demanda enmendada en su totalidad, pero por las razones que aducen, las páginas 15 a 33 de la misma no fueron anejadas al mismo. Véase Apéndice de los peticionarios, pág. 24. Además de que los peticionarios incluyeron las páginas omitidas en su oposición a la desestimación, la parte recurrida también las unió en su escrito de oposición. Por último, resulta claro del recurso *944 que el punto medular del mismo no lo constituye la demanda enmendada, sino la actuación del TPI al denegar una solicitud de los peticionarios para realizar descubrimiento de prueba a los efectos de oponerse a una moción de sentencia sumaria.
Por lo antes expuesto, se deniega la desestimación del recurso según solicitado por los recurridos. Pasemos a atender los méritos del recurso.
ni
Como es sabido, la Regla 23 de las Reglas de Procedimiento Civil rige el descubrimiento de prueba entre las partes antes del juicio. 32 L.P.R.A. Ap. ID, R. 23. De dicha disposición procesal se desprende el principio rector de que el descubrimiento de prueba debe ser amplio y liberal, siempre que las materias no sean de carácter privilegiado y que tengan pertinencia al asunto en controversia. General Electric v. Concessionaries, 118 D.P.R. 32, 38-39 (1986); Rodríguez v. Scotiabank, 113 D.P.R. 210 (1982); Ades v. Zalman, 115 D.P.R. 514 (1984). Un sistema liberal de descubrimiento facilita la tramitación de los pleitos y evita las sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista, las cuestiones y los hechos que en realidad son objeto del litigio. Aponte Rivera v. Sears, 129 D.P.R. 1042 (1992); Lluch v. España, 117 D.P.R. 729 (1986).
Los tribunales vienen obligados a cumplir con su objetivo de llevar a cabo un proceso justo, rápido y económico para las partes, asumiendo un rol activo en el mismo. Por ello, poseen amplia discreción para limitar o extender el alcance del descubrimiento de pruebas. Como norma general, también gozan de poderes específicos de supervisión a través de los mecanismos particulares de descubrimiento de prueba y el poder para sancionar a la parte que es compelida y se rehúsa a cumplir las órdenes dirigidas a descubrir prueba. Regla 34.2 de Procedimiento Civil, 32 L.P.R.A. Ap. IH, R. 34.2; Granados v. Rodríguez Estrada II, 124 D.P.R. 593 (1989); Dávila v. Hospital San Miguel Inc., 117 D.P.R. 807 (1986).
En vista de lo anterior, la Regla 23.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, relativa al término para utilizar los mecanismos de descubrimiento de prueba, establece un plazo directivo de 60 días, a contar desde la notificación de la contestación de la demanda, para concluir las gestiones relacionadas con el descubrimiento de prueba. 
La jurisprudencia ha resuelto que los tribunales tienen discreción para variar el término fijado por la Regla 23.4, según las circunstancias específicas de cada caso, siempre y cuando cumplan con el objetivo fundamental de nuestro ordenamiento procesal civil, a saber: lograr una solución justa, rápida y económica de las controversias. En su discreción de prolongar o acortar el término dispuesto en la Regla 23.4 de las de Procedimiento Civil, el tribunal deberá hacer un balance entre garantizar la pronta solución de las controversias y el que las partes tengan la oportunidad de llevar a cabo un descubrimiento de prueba amplio, de modo que en la vista en su fondo no surjan sorpresas. Machado Maldonado v. Barranco Colón, 119 D.P.R. 563, 566 (1987); Lluch v. España Service Sta., 117 D.P.R. 729, 742-743 (1986). Nuestro Tribunal Supremo ha autorizado un término adicional para realizar el descubrimiento de prueba cuando ello pone al tribunal en condiciones adecuadas de adjudicar un planteamiento. Martínez v. Rivera Hernández, 116 D.P.R. 164, 166 (1985).
Por otra parte, sabemos que la sentencia sumaria es un mecanismo procesal discrecional y extraordinario, cuyo propósito es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversia alguna sobre hechos materiales, razón por la cual no ameritan Ja celebración de un juicio en su fondo. Pilot Life Ins. Co. v. Crespo Martínez 136 D.P.R. 624, 632 (1994). El propósito primordial de la sentencia sumaria es la concesión de un remedio rápido y eficaz en casos en que no existe una controversia real y sustancial sobre ningún asunto medular del litigio. Si de los documentos no refutados surge que no existen controversias de hecho y sólo resta aplicar el derecho, procede dictar sentencia sumaria. PFZ Props. Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 912 (1994); Revlon v. Las Américas Trust Co., 135 D.P.R. 363, 376 (1994); Caquías v. Asoc. Res. Mansiones de Río Piedras, 134 D.P.R. 181, 216 (1993).
*945 A tenor con lo anterior, la Regia 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3, preceptúa que procede dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge la inexistencia de una controversia real y sustancial en cuanto a ningún hecho material, y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente.
El promovente debe haber establecido su derecho con claridad, y quedar demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones no refutadas. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).
Es por ello que la parte promovida deberá presentar declaraciones juradas y los documentos que pongan en controversia los hechos presentados por el promovente. PFZ Props. Inc. v. Gen. Acc. Ins. Co., supra, a la pág. 913; Corp. Presiding Bishop CJC of LDS v. Purcell, supra, a la pág. 721.
Por su parte, la Regla 36.5 de las de Procedimiento Civil dispone que:
“Las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del declarante. Contendrán aquellos hechos qué serían admisibles en evidencia y demostrarán afirmativamente que el declarante está cualificado para testificar en cuanto a su contenido. Copias juradas o certificadas de todos los documentos, o de parte de los mismos a que se haga referencia en una declaración jurada, deberán unirse a la misma o notificarse junto con ésta. El tribunal podrá permitir que las declaraciones juradas se complementen o se impugnen mediante deposiciones o declaraciones juradas adicionales. Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará en su contra sentencia sumaria si procediere.” (Enfasis nuestro). 32 L.P.R.A. Ap. III. R. 36.5.
Véase, además, Luán Investment v. Rexach, 2000 J.T.S. 196; 152 _ D.P.R. (2000); PFZ Properties v. General Accident Insurance Co., supra; Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
Asimismo, la Regla 36.6 dispone que:
“Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia, o podrá ordenar la suspensión de cualquier vista para que la parte pueda obtener declaraciones juradas o tomar deposiciones, o conseguir que la otra parte le facilite cierta evidencia, o podrá dictar cualquier otra orden que sea justa.” (Enfasis nuestro).
En García Rivera v. Enríquez Marín, Opinión de 2 de febrero de 2001, 2001 JTS 15, 153 D.P.R._(2001), nuestro Tribunal Supremo tuvo la oportunidad de considerar una controversia similar a la de autos y discutir el ámbito de la Regla 36.6. Expresó que: “Ciertamente, nuestro ordenamiento jurídico contempla la situación en que el promovido por una moción de sentencia sumaria no ha tenido una adecuada oportunidad de conseguir prueba para apoyar alguno de los hechos esenciales que justifican su oposición. Frente a la situación antes descrita, la Regla 36.6 de Procedimiento Civil, supra, provee al Tribunal de Primera Instancia un mecanismo para remediar esa situación.” Más adelante, señaló que “...confrontado el Tribunal con una solicitud de sentencia sumaria prematura, éste puede, en el ejercicio de su discreción, posponer la evaluación de la moción o denegarla en esa etapa de los procedimientos, amén de que el propósito de las reglas de procedimiento es viabilizar el que los tribunales hagan justicia al resolver las controversias. No obstante, el Tribunal de Primera *946 Instancia debe tomar aquellas medidas que garanticen que no se recurra a la Regla 36.6, súpra, como un ardid para demorar la solución final del asunto. Razón por la cual, es necesario que las razones que aduzca la promovida en apoyo de su contención sean razonables y adecuadas.” (Notas al calce omitidas, énfasis nuestro.) García Rivera v. Enriquez Marín, supra, a la pág. 820.
Se desprende de lo anterior que la Regla 36.6 de Procedimiento Civil reconoce varias alternativas para el curso de acción que ha de ordenar el tribunal en una situación como la de autos, a saber: 1. puede denegar la solicitud de sentencia sumaria y ordenar que el caso se vea en sus méritos mediante juicio plenario; 2. puede denegar la moción con la condición de que la parte promovida esté lista para cuando el caso sea señalado para juicio; 3. puede denegar la moción sin perjuicio de que se reproduzca una vez se notifique la contestación; 4. puede denegar la moción hasta que la parte promovida haya tenido una oportunidad razonable de obtener declaraciones juradas, tomar deposiciones o valerse de los métodos de descubrimiento de prueba; 5. puede posponer su consideración hasta la conferencia final con antelación al juicio; o 6. puede dictar cualquier otra orden que fuere justa.
Hay que tener presente que el propósito de las reglas procesales es viabilizar que los tribunales hagan justicia al resolver las controversias. Pérez Rosado v. El Vocero de P.R., 99 J.T.S. 160, pág. 268, 149 D.P.R. _ (1999). Véase, además, J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, (Ed. 2000), Publicaciones JTS, T. I, págs. 617-618. Es por ello, que entre las facultades reconocidas, los tribunales pueden proveer a la parte promovida de una moción de sentencia sumaria la oportunidad razonable de tomar deposiciones, entre otras, a los efectos de poder oponerse adecuadamente a la sentencia sumaria solicitada.
IV
Nos corresponde ahora analizar, a la luz del derecho aplicable, si el TPI cometió error al no permitirle a los peticionarios realizar el descubrimiento de prueba que conforme a la Regla 36.6 interesaban. De los autos surge, que en su moción solicitando descubrimiento de prueba presentada el 26 de marzo de 2002, los peticionarios articularon la necesidad de tomarle deposición a las personas que suscribieron las declaraciones juradas que apoyaban la moción de sentencia sumaria de los recurridos. También expusieron que las Reglas 36.5 y 36.6 de Procedimiento Civil sostenían tal petición, pues la primera permitía la impugnación de declaraciones juradas por deposiciones u otras declaraciones juradas, y la segunda establecía el curso a seguir por el tribunal cuando la parte promovida no podía obtener declaraciones juradas para oponerse eficazmente.
De otra parte, los peticionarios esbozaron en su moción de reconsideración que las declaraciones juradas hacían una relación de varios eventos y transacciones que no documentaban, razón por la cual las deposiciones de tales declarantes les resultaban indispensables. También expusieron la desventaja en que éstos se encontraban porque, a pesar de que habían notificado cierto descubrimiento de prueba a los demandados, éstos no habían contestado el mismo, lo que sin duda, los dejaba huérfanos de información necesaria para controvertir las declaraciones juradas de la moción de sentencia sumaria.
En su escrito de oposición, los recurridos adujeron que el TPI actuó dentro del ámbito de su facultad. En apoyo de su contención, ilustraron el trasfondo procesal del caso, enumerando varias de las prórrogas solicitadas por los peticionarios y otros incidentes alegadamente atribuibles a éstos, que luego de tres años de presentada la demanda original, según los recurridos, han servido de escollo para la pronta resolución de este caso. En lo pertinente, sostuvieron que en el período de seis meses concedido a los peticionarios para realizar descubrimiento de prueba en el caso, éstos no tomaron las deposiciones que ahora solicitan al amparo de la Regla 36.6. Señalaron, además, que la pertinencia y posible necesidad de tales deposiciones eran razonablemente anticipables desde que se concibió la demanda original. Oposición al Recurso de Certiorari, pág. 8, párrafo 34. No les asiste la razón.
Del expediente surge que durante el aludido período de seis meses concedido el 23 de julio de 2001 por el TPI para realizar el descubrimiento de prueba en el caso, justo después de la última demanda enmendada, los aquí *947 peticionarios realizaron gestiones conducentes a comenzar el descubrimiento de prueba en este caso. Prueba de ello lo constituye el Interrogatorio cursado a los recurridos el 14 de septiembre de 2001, el cual fue notificado al tribunal vía Moción Informativa de igual fecha y el Requerimiento de Documentos de 1ro de marzo de 2001. Véase Apéndice de los peticionarios, págs. 70 y 71-79. No surge del expediente ni de la comparecencia de los recurridos que dichas solicitudes, cursadas dentro del término de seis meses concedido por el TPI, hayan sido contestada por dicha parte. Véase “Recurso de Certiorari”, pág. 4.
Contrario a lo argumentado por la parte recurrida, no podemos llegar a la conclusión de que los peticionarios tuvieron una oportunidad adecuada para llevar a cabo el descubrimiento de prueba, de suerte que les impida su reclamo, a tenor con la Regla 36.6 de Procedimiento Civil. Tanto en su moción de 6 de marzo de 2002 solicitando la autorización del TPI para realizar el descubrimiento para oponerse a la moción de sentencia sumaria, como en la reconsideración del 17 de mayo de 2002, los peticionarios articularon razones meritorias razonables y adecuadas para tomar las deposiciones de los testigos que suscribieron las declaraciones juradas de los recurridos. No empece, el TPI las desoyó al denegar el pedido de los peticionarios. Al así actuar erró.
A tenor con la jurisprudencia aplicable a esta situación procesal, el TPI pudo haber tomado otros cursos de acción que no lesionaran los derechos de los peticionarios. De este modo, pudo haber denegado la moción de sentencia sumaria o suspendido cualquier vista, para que la parte promovida tuviera la oportunidad de obtener declaraciones juradas o tomar deposiciones. También pudo haber emitido cualquier orden que fuese justa, entre las que obviamente se encontraba conceder un plazo razonable para el descubrimiento solicitado. El curso tomado por el TPI fue desacertado, máxime cuando las alegaciones de las partes en este caso giran mayormente en tomo a hechos, intención y conocimiento.
De conformidad con este análisis, las deposiciones al Sr. Saleh Yassin y la Leda. Diana Azizi de Arbona resultaban esenciales para una oposición eficaz a la moción de sentencia sumaria de los recurridos, ya que son los hechos enunciados por éstos en sus respectivas declaraciones juradas los que sustentan la solicitud de sentencia sumaria de los recurridos. Si de alguna fuente han de controvertirse hechos esenciales, ha de ser del testimonio de estos dos declarantes. Incidió el TPI al no concederle a los peticionarios un plazo razonable para realizar el descubrimiento de prueba, a todas luces necesario, para poder oponerse a la moción de sentencia sumaria de los demandados.
V
Por los fundamentos antes expuestos, se expide el auto de certiorari solicitado y se revoca la orden emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 3 de junio de 2002 y notificada el 19 de junio de 2002. Se devuelve el caso a la sala de origen para la continuación de los. procedimientos de forma compatible con lo aquí resuelto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 44
1. Los demandantes Issah Mohammed Mahmoud, Nacer Mohammed Mahmoud, Sageda Mohammed Mahmoud y Nissrin Mohammed Mahmoud son hijos de la causante, Naife Issa Saleh.
2. Apéndice de los peticionarios, págs. 12-23, Anejo 1.
3. Los demandantes alegan que los esposos Yassin eran también propietarios de un negocio llamado C.O.D.Drugs.
*948 4. Según surge del expediente, la causante padeció de leucemia. Véase Apéndice de los recurridos, Exh. 51.
5. Véase párrafo 2.12 de la Demanda Enmendada de 7 de mayo de 2001, Apéndice de los recurridos, págs. 138-139, Exh. 47.
6. Véase párrafos 4.1 al 4.7 de la Demanda Enmendada de 7 de mayo de 2001. Apéndice de los recurridos, pág. 141, Exh. 47.
7. Según el párrafo 4.8 de la Demanda Enmendada, se mencionan los siguientes objetos y su valor:
Máquina de coser industrial Singer ($3,500.00)
Máquina de coser industrial Ruedos ($3,500.00)
Máquina de coser industrial Merou ($3,500.00)
Colección de Monedas Americanas (5-10 mil c/u)
Colección de Caricaturas (3-5 mil c/u)
Dos muñecas de colección “Cabbage Patch” originales ($950.00)
Colección de Monedas en general ($2,000.00)
Materiales de Decoración ($700-1,000.00)
Efectos personales como papeles personales, documentos legales, Honorarios (placas), Flores artificiales, y otras que no recuerda. Apéndice de los recurridos, pág. 142, Exh 47.
8. El texto de dicha orden reza: “SE LE PERMITE A LA PARTE DEMANDANTE TERMINO DE 20 DIAS PARA REPUCAR Y ATENDEREMOS LA SOLICITUD.”
9. Dichas órdenes rezan, en lo pertinente, como sigue:

“1. MOC SOL PRORR PARA CONTESTAR SENT SUM ‘SE AUTORIZA TERMINO ADICIONAL FINAL DE (15) DIAS A PARTIR DE NOTIFICACIÓN PARA EXPRESARSE SOBRE LA SOLICITUD DE SENTENCIA SUMARIA DEL DEMANDADO. VEASE MINUTA DEL 13 DE MARZO DE 2002 ’.

2. MOC SOL DESC PRUEBA PARA OPONERSE A LA SENT SUM ‘EVALUADOS LOS AUTOS DEL CASO A LA SOLICITUD, NO HA LUGAR’. ” Apéndice de los peticionarios, pág. 61, Anejo 6.
10. Apéndice de los peticionarios, Anejo 8, a la pág. 62.
11. Sobre este particular, la mencionada Regla dispone: “El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, de conformidad con las disposiciones de estas reglas, será como sigue:

(a) En general. Las partes podrán hacer descubrimiento de prueba sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición o localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.

12. La referida regla reza: “Las partes concluirán las gestiones relacionadas con el descubrimiento de prueba dentro del término de sesenta (60) días siguientes a la notificación de la contestación a la demanda, reconvención, demanda contra tercero y demanda contra coparte. El tribunal tendrá facultad para prorrogar o acortar dicho término según las circunstancias del caso lo ameriten y garanticen una pronta solución de la controversia.” 32 L.P.R.A. Ap. Ill, R. 23.4.
13. Dicho caso trataba de una acción de daños y perjuicios en la que el demandante solicitó al tribunal que ordenara al Fondo del Seguro del Estado producir ciertos documentos para oponerse adecuadamente a una moción de sentencia sumaria presentada por su patrono. El Tribunal de Instancia denegó la petición; el Tribunal de Circuito de Apelaciones no expidió el auto de certiorari y el Tribunal Supremo revocó, autorizando el descubrimiento solicitado.